# CENTRAL ARKANSAS TELEPHONE COOPERATIVE, INC., et al. *v.* ARKANSAS PUBLIC SERVICE COMMISSION

CA 97-950 965 S.W.2d 790

Court of Appeals of Arkansas
Divisions III and IV
Opinion delivered March 25, 1998
[Petition for rehearing denied April 22, 1998.]

*William Bullock; George Hopkins;* and *Williams & Anderson,* by: *Leon Holmes,* for appellants.

*Paul J. Ward,* for appellee Arkansas Public Service Commission.

*Stephen B. Rowell;* and *Friday, Eldredge & Clark,* by: *Kevin A. Crass* and *R. Christopher Lawson,* for appellee ALLTEL Arkansas, Inc.

TERRY CRABTREE, Judge. On August 18, 1997, Central Arkansas Telephone Cooperative and seven other local exchange carriers, appellants, filed a notice of appeal from Order No. 9 issued by the Arkansas Public Service Commission (Commission) in Docket No. 96-428-U. Appellants also filed a motion for stay and expedited appeal. This court denied their motion for stay but granted their motion for an expedited appeal. Their appeal concerns Act 77, the "Telecommunications Regulatory Reform Act of 1997," and its effect on the Arkansas IntraLATA Toll Pool (AITP or Toll Pool). In Order No. 9, the Commission held that the passage of Act 77 made participation in the Toll Pool voluntary and vacated Order No. 7, which created the Toll Pool. On appeal, appellants argue that the Commission erred in holding that Act 77 made participation in the Toll Pool voluntary without further action of the Commission.

The Arkansas IntraLATA Toll Pool (the Toll Pool) was established by Commission Order No. 7 in Docket No. 83-042-U to allow local exchange carriers (LECs) to recover their costs of providing intraLATA toll service. Participation in the Toll Pool was required by Order No. 7, and the Toll Pool agreement provided that all LECs would charge their customers uniform rates for intraLATA toll calls and contribute these revenues to the Toll Pool.

The Toll Pool then redistributed the revenues to the LECs based on their individual needs, causing some LECs to contribute more to the Toll Pool than their actual expenditures and some LECs to receive more in reimbursements than their contributions to the Toll Pool.

In 1996, GTE Southwest, Inc., and GTE Arkansas, Inc. (collectively "GTE"), sought permission from the Commission to exit the Toll Pool so that it could flexibly price intraLATA toll services to meet competition as required by the federal Telecommunications Act of 1996. GTE argued that it was the only local exchange carrier in Arkansas that was required to implement full competition for intraLATA toll service in its serving areas by August 7, 1997, and therefore, it needed the same flexibility in pricing toll plans as the interexchange carriers, which is inconsistent with a pooling environment. Docket No. 96-428-U was opened by the Commission in response to GTE's motion.

Act 77, the "Telecommunications Regulatory Reform Act of 1997," was passed by the Arkansas General Assembly and became law on February 4, 1997. Act 77 significantly changed the Commission's regulation of the telecommunications industry. Basically, it limited the Commission's authority over certain "electing" LECs and their revenues and permitted companies that elect regulation under Act 77 to avoid much of the rate regulations of the Commission to which telephone companies are subject. Additionally, section 4 of the Act created the Arkansas Universal Services Fund (AUSF), the purpose of which is "to promote and assure the availability of universal service at rates that are reasonable and affordable, and to provide for reasonably comparable services and rates between rural and urban areas."

After Act 77 was enacted, the Commission expanded Docket No. 96-428-U to also consider AT&T Communications of the Southwest, Inc.'s (AT&T's) request to abolish the Toll Pool in light of the passage of Act 77. The Commission entered Order No. 5, which set a public hearing on GTE's and AT&T's requests. Alltel Arkansas, Inc. (Alltel) and appellants, and others were permitted to intervene in the docket.

In its comments filed with the Commission, AT&T argued that the Toll Pool should be abolished because it depends on mandatory participation. AT&T noted that section 11(f) of Act 77 exempts certain LECs from the requirements of Ark. Code Ann. § 23-3-114(b), which gives the Commission authority to fix uniform rates, and that this exemption could be interpreted to mean that the Commission no longer has authority to order uniform or statewide average intraLATA toll rates for electing LECs.

Alltel argued in its prefiled testimony that participation in the Toll Pool became voluntary with the passage of Act 77. Its witness, Jack Redfern, testified in his prefiled testimony that Act 77 significantly changed the status of telecommunications providers in the state of Arkansas:

> [H]istorically the Commission has relied on a provision of Arkansas law which allowed it to require statewide average toll rates. This law is referred to in the AT&T Comments as Arkansas Code Annotated Section 23-3-114. Section 11(f) of Act 77 expressly provides that Arkansas Code Annotated Section 23-3-114 is not applicable to companies electing alternative regulation under Act 77. Additionally, and just as importantly, Act 77 provides ILECs [Interstate Local Exchange Carriers] the ability to elect to be regulated under forms of regulation that are alternative to the traditional rate base rate of return regulation. A number of ILECs have elected to be regulated under Section 6 or Section 12 of Act 77, the alternative regulation provisions. One of the significant results of these elections is that the Commission no longer regulates the earnings and revenue streams of the ILECs. While rates of basic local exchange services and intrastate switched access rates are capped, electing ILECs are granted pricing flexibility with regard to all other services including intraLATA toll. The electing ILECs, therefore, cannot be required to maintain toll rates at the same level as all other ILECs. Thus, there is an irreconcilable conflict between Act 77 and the Commission's previous Order requiring ILECs to participate in the Toll Pool. As a result of the passage of Act 77 and the subsequent election of ILECs under Act 77, the Toll Pool, therefore has become a purely voluntary arrangement among telecommunications providers and the Commission cannot mandate participation in the Toll Pool. In other words, the Commission lacks jurisdiction to require participation in the Toll Pool or to estab-

lish the intraLATA toll rates charged by an incumbent local exchange carrier.

Staff of the Commission also argued that participation in the Toll Pool became voluntary as a result of the passage of Act 77. John Bethel, manager of the Telecommunications section of the general Staff of the Commission, argued that participation in the Toll Pool should no longer be mandatory for all LECs. In his prefiled testimony, he noted that sections 8(c) and 9(a) of Act 77 authorize ILECs selecting alternative forms of regulation to increase or decrease rates at any time for telecommunications services (including intraLATA toll service) and, consequently, electing ILECs may change their intraLATA toll rates without prior Commission approval. He then explained that the operation of the Toll Pool is dependent upon all members charging uniform intraLATA toll rates and that, absent identical toll rates being charged by all participants, the Toll Pool members could not be equitably compensated under the Toll Pool's current compensation scheme. He concluded that participation in the Toll Pool should no longer be mandatory for all ILECs.

Appellants' witness Larry Lovell, chairman and CEO of E. Ritter Telephone Company and Tri County Telephone Company, disagreed with AT&T's suggestion that the Commission should abolish the Toll Pool and argued that the establishment of the Arkansas Universal Services Fund (AUSF) must precede the abolishment of the Toll Pool. He testified that the LECs realize that the current Toll Pool arrangement will have to change with the implementation of the dialing arrangements required by federal law but argued that significant time and industry resources would be required to allow an acceptable method of Toll Pool compensation to replace the existing Toll Pool procedures. He also testified that, under section 4(e) of Act 77 of 1997, the LECs must have an opportunity to apply for replacement of any revenue shortfalls that might be caused by elimination of the Toll Pool and, at this time, it is unclear when the AUSF will be in place and available to replace such revenue losses.

Another witness for appellants, Steven Sanders, president and general manager of Northern Arkansas Telephone Company, Inc., also stated in his prefiled testimony that he did not believe the

General Assembly intended to abolish the Toll Pool with the passage of Act 77.

Order No. 9 was entered by the Commission on July 2, 1997. In it, the Commission held that participation in the Toll Pool became voluntary with the passage of Act 77. The Commission explained:

> In Act 77, the General Assembly clearly provided ILECs the opportunity to elect to operate under alternative forms of regulation and once an ILEC elects alternative regulation, it can flexibly price intraLATA toll services under §§ 8(c) and 12(a) of Act 77. Furthermore, when an ILEC elects alternative regulation, § 11(f) of Act 77 exempts the ILEC from a number of statutory requirements including, Ark. Code Ann. § 23-3-114 which requires the maintenance of average message toll service rates. The ILEC deregulatory election provisions in conjunction with the § 11(f) exemptions of Act 77 supersede and vacate the Commission Order requiring mandatory participation of the ILECs in the AITP.
>
> Based upon Act 77, the Commission finds that ALLTEL is correct in stating that "the Toll Pool *became* voluntary with the passage of Act 77" and pursuant to Act 77 "the Commission lacks jurisdiction to require participation in the Toll Pool or to establish the intraLATA toll rates charged" by electing ILECs. Therefore, the Commission finds that by operation of law Order No. 7 in Docket No. 83-042-U was vacated effective February 4, 1997, upon enactment of Act 77. AT&T's request to abolish the AITP need not be addressed since the Commission order requiring participation in the AITP was vacated by operation of law. With the enactment of Act 77, GTE's Motion became moot.

Thereafter, appellants moved for clarification of Order No. 9, specifically requesting the Commission to issue an order stating that any reduction in the net revenue experienced by any rural telephone company as a result of the operation of Act 77 on the distributions of the Toll Pool would be subject to revenue replacement in accordance with section 4(e)(4)(B) of Act 77. The Commission responded in Order No. 10 that absolutely nothing in Order No. 9 should be interpreted as a bar to any LEC's right, pursuant to section 4(e)(4)(B) of Act 77, to seek revenue replacement later in an appropriate docket. Appellants petitioned the

Commission to rehear Order No. 9 and to stay its effective date pending rehearing. The Commission denied appellants' petition in Order No. 11.

Appellants' single point for reversal is that the Commission was clearly erroneous in interpreting Act 77 to hold that it rendered participation in the Toll Pool voluntary effective the date of its passage. Appellants argue that nowhere in the Act does it state that participation in the Toll Pool becomes voluntary on the effective date of the Act and that section 4(e) of the Act prohibits participation in the Toll Pool being made voluntary before the AUSF is implemented. Section 4(e) of Act 77 provides: "The Commission shall not, prior to the implementation and availability of funds from the AUSF, require any local exchange carrier to reduce rates for intrastate switch access services or require any local exchange carrier to reduce its net revenue received from the Arkansas IntraLATA Toll Pool (AITP)."

The Commission addressed this argument in Order No. 9:

> The ILECs contend that no action may be taken on the AITP until such time as the Arkansas Universal Service Fund is established to compensate the ILECs for any revenues lost through dissolution of the AITP . . . .
>
> The Commission has not taken any action which requires any ILEC "to reduce rates for intrastate switched access services," nor has the Commission taken any action which requires any ILEC "to reduce its net revenue received" from the AITP. Act 77 vacated the Commission order requiring participation in the AITP effective February 4, 1997, without Commission action. Therefore, § 4(e) of Act 77 cited by the ILECs has no application in this proceeding.

Nevertheless, appellants maintain that the Commission's action in holding that participation in the Toll Pool became voluntary allows members to leave the Toll Pool before the AUSF is in place, which will cause a reduction in revenues to the Toll Pool and thus a reduction in the revenues received by the remaining Toll Pool members. They conclude that this result is contrary to the plain wording of section 4(e). The problem with appellants' argument is that there is no evidence that appellants have suffered any lost revenue since the Commission held that Act 77 rendered

participation in the Toll Pool voluntary. Consequently, even if the Commission erred in its finding, appellants have not demonstrated that they have been prejudiced by this action. While they speculate that they could be prejudiced by the Commission's decision in the future, no prejudice has been shown at this time. It is well settled that the appellate court does not render advisory opinions nor answer academic questions. *Wilson v. Pulaski Ass'n of Classroom Teachers*, 330 Ark. 298, 954 S.W.2d 221 (1997). *See also Almond v. Cigna Property and Casualty Ins. Co.*, 322 Ark. 268, 908 S.W.2d 93 (1995); *Tortorich v. Tortorich*, 50 Ark. App. 114, 902 S.W.2d 247 (1995). Where error is alleged, prejudice must be shown. *City of W. Memphis v. Burroughs*, 319 Ark. 611, 893 S.W.2d 323 (1995). It is no longer presumed that error is prejudicial. *Abernathy v. Weldon, Williams, & Lick, Inc.*, 54 Ark. App. 108, 923 S.W.2d 893 (1996); *Jones v. Jones*, 43 Ark. App. 7, 858 S.W.2d 130 (1993).

 Moreover, assuming without deciding that appellants are correct in their contention that Act 77 did not render participation in the Toll Pool voluntary effective the date of its enactment, appellants' argument is now moot because the AUSF is in place. Appellants' initial appeal was that the Commission erred in finding that participation in the Toll Pool became voluntary prior to the implementation and availability of funds from AUSF. In its response to the appellants' motion for stay and expedited appeal, the Commission attached a copy of Order No. 5, which states that "the Commission will implement rules for the AUSF and make funds available to the eligible telecommunication carriers on or before October 13, 1997." Order No. 5 was entered in Docket No. 97-041-R, a rule-making proceeding to establish rules and procedures necessary to implement the Arkansas Universal Service Fund. Indeed, appellants' counsel acknowledged in the oral argument of this appeal that the AUSF is in effect. Therefore, a decision on the issue appellants raised on appeal will have no practical effect. An issue is moot when it has no legal effect on an existing controversy; when a decision of this court could not afford appellant any relief. *Bryant v. Arkansas Pub. Serv. Comm'n*, 45 Ark. App. 47, 870 S.W.2d 775 (1994). As a general rule, the appellate

courts do not address moot issues. *Dillon v. Twin City Bank*, 325 Ark. 309, 924 S.W.2d 802 (1996).

Appeal dismissed.

ROBBINS, C.J., and AREY, JENNINGS, STROUD, and MEADS, JJ., agree.