AT&T COMMUNICATIONS of the SOUTHWEST, INC. *v.*
ARKANSAS PUBLIC SERVICE COMMISSION

CA 98-517 994 S.W.2d 494

Court of Appeals of Arkansas
Divisions I and II
Opinion delivered July 7, 1999

[Petition for rehearing denied August 25, 1999.]

178

179

*Wright, Lindsey & Jennings LLP*, by: *N.M. Norton* and *J. Mark Davis*, for appellant.

*Paul J. Ward*, for appellee Arkansas Public Service Commission.

*George Hopkins*; and *Williams & Anderson LLP*, by: *Leon Holmes*, for appellees/cross-appellants Central Arkansas Telephone Cooperative, Inc.; Lavaca Telephone Company, Inc.; Magazine

Telephone Company, Inc.; Northern Arkansas Telephone Company, Inc.; Southwest Arkansas Telephone Company, Inc.; Walnut Hill Telephone Company, Inc.

*Chisenhall, Nestrud & Julian, P.A.*, by: *Lawrence E. Chisenhall, Jr.,* and *Michael T. Jackson,* for appellees Arkansas Telephone Company, Inc.; Century Telephone of Arkansas, Inc.; Century Telephone of Mountain Home, Inc.; Century Telephone of Redfield, Inc.; Century Telephone of South Arkansas, Inc.; Cleveland County Telephone Company; Decatur Telephone Company; Mountain View Telephone Company; Prairie Grove Telephone Company; E. Ritter Telephone Company; South Arkansas Telephone Company; Tri-County Telephone Company; Yelcot Telephone Company; Yell County Telephone Company.

*Timothy S. Pickering,* for appellee Southwestern Bell Telephone Company.

*Stephen B. Rowell;* and *Friday, Eldredge & Clark,* by: *Kevin A. Crass,* for appellees Alltel Arkansas, Inc.; Alltel Mobile Communications, Inc.; and Alltel Communications, Inc.

JOHN F. STROUD, JR., Judge. This appeal results from Arkansas Public Service Commission Order No. 12, which concerns reimbursement funding from the Arkansas Universal Services Fund. The Administrator of the fund determined that twenty-one rural phone companies who requested reimbursement funding should receive a total amount of $9.7 million on an annual basis from the fund. Appellant, AT&T Communications of the Southwest, Inc. (AT&T), and several telecommunications providers requested that the Commission reconsider the Administrator's determination. After a public hearing held in response to their requests, the Commission handed down Order No. 12. On appeal, AT&T argues three points for reversal, contending the Commission's order is unlawful because: (1) it is inconsistent with the Constitution of the State of Arkansas; (2) it relies on a statute that is preempted by federal law; and (3) it is inconsistent with applicable state statutes and not supported by substantial evidence. Appellees Central Arkansas Telephone Cooperative, Inc.; Lavaca Telephone Company, Inc.; Magazine Telephone Company, Inc.; Northern Arkansas Telephone Company, Inc.; Southwest Arkan-

sas Telephone Cooperative, Inc.; and Walnut Hill Telephone Company, Inc. (hereinafter referred to collectively as Cross-Appellants), contend on cross-appeal that the Commission erred in changing the dates of the base year for purposes of calculating their AUSF reimbursement. We find no error to any of these points and affirm.

The Arkansas Universal Service Fund (AUSF) was established by Act 77 of 1997, the Telecommunications Regulatory Reform Act of 1997, in order to promote and assure the availability of universal service at rates that are reasonable and affordable and to provide for reasonably comparable services and rates between rural and urban areas. Section 4 of the Act, codified at Arkansas Code Annotated section 23-17-404 (Supp. 1997), provides for the administration and the funding of the AUSF. The AUSF is funded from a charge levied on all telecommunications providers in the state in proportion to each provider's intrastate retail telecommunications service revenues. Section 23-17-404(e) sets out the instructions and guidelines that the Commission shall adhere to in establishing and implementing the AUSF, and subsection (1) states that "AUSF funding shall be provided directly to eligible telecommunications carriers."

As a result of the passage of Act 77, twenty-one rural telecommunications providers (hereinafter referred to as the Requesting-ILECs[1]) sent requests to the AUSF Administrator for reimbursements from the fund totaling $9.8 million. On December 8, 1997, the AUSF Administrator filed its report with the Commission, recommending that the Requesting-ILECs receive $9.7 million annually from the fund. Various objections and motions for reconsideration were filed by different parties, including Alltel Arkansas, Inc., Alltel Mobile Communications, Inc., and Alltel Communications, Inc. (hereinafter collectively referred to as Alltel); Southwestern Bell Telephone Company; and AT&T. In response to these various motions, the Commission set a public hearing to consider the Administrator's reimbursement determi-

---

[1] ILEC — Incumbent local exchange carrier is a telecommunications provider of basic local exchange service and switched-access service who was providing service on February 8, 1996. *See* Ark. Code Ann. § 23-17-403(16) and (18) (Supp. 1997).

nations. Thereafter, the Commission entered Order No. 12, which in part modified some of the Administrator's determinations, and, on April 2, 1998, in Order No. 13, the Commission denied AT&T's and the Cross-Appellants' petitions for rehearing of Order No. 12.

Before discussing the merits of the parties' appeals, we will discuss the contents of Order No. 12. The Order consists of twenty pages. In the first few pages of the Order, the Commission discusses the procedure it followed in considering the Administrator's determination. The Commission then discusses the specific objections filed by various parties to the Administrator's determination. The Order concludes with the Commission ordering seven specific changes to the Administrator's determination:

> 1. That the Administrator shall true-up the reimbursement requests of the Requesting ILECs based upon AITP revenues using a test year ending September 30, 1997, by no later than July 1, 1998, and adjust the Requesting ILECs reimbursement requests accordingly:

> 2. That the Century Companies shall on or before February 19, 1998, file with the AUSF Administrator a revised request for AUSF reimbursement reflecting that the Century Companies are toll providers and submit all workpapers supporting the revised request;

> 3. That the TDS Companies shall submit revised AUSF reimbursement requests to the AUSF Administrator on or before February 19, 1998, as reflected in Mr. Zeiler's testimony on behalf of the TDS Companies;

> 4. That SWATC shall submit a revised reimbursement request to the AUSF Administrator on or before February 19, 1998, accurately reflecting SWATC's revenues for the test year ending December 31, 1996;

> 5. That E. Ritter and Tri-County shall submit supporting documentation to the AUSF Administrator on or before February 19, 1998, sufficient to allow the Administrator to determine the accuracy of the request for Operator Service Expenses increases and lost revenues resulting from reduced NECA interstate average schedule settlements;

6. That NATCO, SWATC, Walnut Hill and Yell County shall on or before February 19, 1998, submit to the AUSF Administrator revised AUSF reimbursement requests to account for the FCC's adjustment of the corporate operations expense and if such revised requests are not made on or before February 19, 1998, the AUSF Administrator shall revise the reimbursement amounts of NATCO, SWATC, Walnut Hill and Yell County accordingly; and

7. That the AUSF Administrator shall file all supporting workpapers with the requests for reimbursement filed in accordance with AUSF Rule 5.02(B).

■ We are troubled that, from our reading of Order No. 12, we are unable to determine whether the Commission approved the other portions of the Administrator's determination. Arkansas Code Annotated section 23-2-423(a)(1) (Supp. 1997) provides that "[a]ny party to a proceeding before the commission aggrieved by an order issued by the commission in the proceeding may obtain a review of the order in the Court of Appeals. . . ." Nevertheless, because of the apparent lack of finality of at least some portions of Order No. 12, it is impossible for us to determine in several instances, as discussed later in this opinion, whether the party appealing a ruling has been aggrieved by it. Where error is alleged, prejudice must be shown; it is well settled that this court will not render an advisory opinion. *Central Ark. Tel. Coop., Inc. v. Arkansas Pub. Serv. Comm'n*, 61 Ark. App. 147, 965 S.W.2d 790 (1998).

*AT&T's Point No. 1: Order No. 12 is unlawful because it relies upon Arkansas Code Annotated sections 23-17-404 and 23-17-404(e)(4)(B), which are inconsistent with Article 2, section 19, of, and Amendment 14 to, the Arkansas Constitution.*

AT&T first argues that, because sections 23-17-404(e)(4)(A) and (B) entitle the Requesting-ILECs to receive an annuity forever once the Administrator or Commission approves reimbursement funding from the AUSF, they create a perpetuity in violation of Article 2, section 19, of the Arkansas Constitution. This section provides that "[p]erpetuities and monopolies are contrary to the genius of a republic, and shall not be allowed. . . ."

In Order No. 12, the Commission admitted that there is nothing in Act 77 that allows it to terminate or alter AUSF funding which meets the criteria established by section 23-17-404(e)(4). The Commission refused, however, to address whether this section was unconstitutional, holding: "Were the Commission to find this section of Act 77 to be in violation of the State Constitution and grant the relief requested by [AT&T,] it would have the effect of nullifying an entitlement program created by the General Assembly to subsidize the operations of the ILECs. This exceeds the scope of the Commission's jurisdiction." On appeal to this court, AT&T asks us to declare sections 23-17-404(e)(4)(A) and (B) void.

Because AT&T has not appealed the Commission's holding that it lacked jurisdiction to declare a portion of Act 77 unconstitutional, we do not address that issue. In its reply brief, AT&T agrees that the Commission lacks jurisdiction to decide its constitutional claims but contends that the Commission's jurisdiction is not relevant. It argues that Arkansas Code Annotated section 23-2-423(c)(4) (Supp. 1997) gives this court jurisdiction to decide its constitutional arguments on their merits although those issues were not reached by the Commission. Relying on this section, it contends that it need only register its constitutional objections with the Commission in order for this court to have jurisdiction to decide its argument. We disagree.

■ Section 23-2-423(c)(4) provides:

> The review shall not be extended further than to determine whether the commission's findings are supported by substantial evidence and whether the commission has regularly pursued its authority, including a determination of whether the order or decision under review violated any right of the petitioner under the laws or Constitution of the United States or the State of Arkansas.

Although this section provides that this court must determine whether a commission order or decision violates any constitutional rights of the petitioner, it requires us to do so in the context of determining whether the commission has regularly pursued its authority. AT&T has not argued that the Commission has failed

to regularly pursue its authority; in fact it agrees with the Commission's holding that it lacked jurisdiction to decide its constitutional claims. We therefore cannot agree that under these facts this statute gives us jurisdiction to address the merits of AT&T's constitutional claims.

■ Given AT&T's decision not to appeal the Commission's jurisdictional ruling, its only recourse is to seek a declaratory judgment on its constitutional claims in circuit court. *See Lincoln v. Arkansas Pub. Serv. Comm'n*, 40 Ark. App. 27, 842 S.W.2d 51 (1992), *aff'd*, 313 Ark. 295, 854 S.W.2d 330 (1993), where this court held that a Commission denial of jurisdiction over whether a statute unconstitutionally infringed on the Arkansas Constitution did not deny the appellant a remedy because he could challenge the constitutionality of the statute in a declaratory judgment action. In pointing out this remedy, however, we are not expressing an opinion concerning whether the circuit court properly has jurisdiction of AT&T's constitutional arguments, as that is a matter for the circuit court to determine in the first instance. *Accord General Tel. Co. of the S.W. v. Lowe*, 263 Ark. 727, 569 S.W.2d 71 (1978).

For its second argument under this point, AT&T claims that Arkansas Code Annotated sections 23-17-404(e)(4)(A) and (B) also violate Amendment 14 to the Arkansas Constitution. For the reasons we set out in response to AT&T's first constitutional argument, we are also unable to address this argument. Furthermore, we agree with appellees that this argument was not sufficiently raised before the Commission. This argument was first mentioned by AT&T in its response to Alltel's and Southwestern Bell's motions for reconsideration, where it said that "[t]his unique privilege conferred upon certain corporations by Act 77 may also run afoul of Art. 2, section 17 and Amendment 14 of the State Constitution as special and preferential legislation." AT&T did not cite any authority for its argument or make a convincing argument in support of it. There is no record that AT&T pursued this argument at the hearing. However, in its application for rehearing, it stated that, for purposes of its appeal, it was renewing its claim that the Administrator's AUSF Reimbursement Determination must be rejected because the entire AUSF entitlement regime

enacted by the General Assembly violates Article 2, sections 17 and 19, of the Arkansas Constitution and Amendment 14 to the Arkansas Constitution. Although the Commission referenced AT&T's statement in Order No. 12, the Commission made no attempt to address it.

■ ■ We hold that AT&T's scant references to an Amendment 14 violation were insufficient to bring this argument before the Commission and before this court. The appellate court will not address issues on appeal that were not raised below. *See Bryant v. Arkansas Pub. Serv. Comm'n*, 54 Ark. App. 157, 924 S.W.2d 472 (1996). As with a trial court, the Commission must be presented with a constitutional issue before an appellate court will consider it on appeal; a constitutional issue will not be addressed if it was not brought to the trial court's attention for a ruling during trial or at some point prior to the entry of final judgment. *See Stewart v. Winfrey*, 308 Ark. 277, 824 S.W.2d 373 (1992). A fleeting reference to a constitutional argument without any citation of authority, argument, or even any reference to the basis for the reference is insufficient to present the issue to the chancellor for ruling. *Id; accord Brumley v. Naples*, 320 Ark. 310, 896 S.W.2d 860 (1995). Furthermore, Arkansas Code Annotated section 23-2-422(b) (Supp. 1997) requires that "[t]he application for rehearing shall set forth specifically the grounds upon which the application is based." Section 23-2-423(c)(2) states that "[n]o objection to any order of the commission shall be considered by the Court of Appeals unless the objection shall have been urged before the commission in the application for rehearing."

*AT&T's Point No. 2: Order No. 12 is unlawful because it relies in part upon Arkansas Code Annotated section 23-17-404(e)(4)(A), which is preempted in part by federal law.*

AT&T contends for its second point on appeal that the Commission's allowance of the claims of four of the Requesting-ILECs for reimbursement from the AUSF for their "Corporate Operations Expense" violates federal law. AT&T alleges that the Federal Communications Commission has imposed a cap of 115% on Corporate Operations Expense and that four of the Requesting-ILECs who were affected by this cap included their excess

Corporate Operations Expense in their requests for reimburse-ment. Although AT&T admits that section 23-17-404(e)(4)(A) requires the Commission to either increase the rates for basic local exchange service or increase the incumbent local exchange car-rier's recovery from the AUSF or a combination thereof to replace these lost revenues, it contends that the allowance of these claims at the state level frustrates the federal effort "to ensure that carriers use universal service support to offer better service to their cus-tomers. . .," *see In the Matter of Federal-State Joint Board on Universal Service, Report and Order*, 12 FCC Rcf 1, 8930 (1997), and violates section 254(f) of the Telecommunications Act of 1996. That sec-tion provides:

> A State may adopt regulations not inconsistent with the Commission's rules to preserve and advance universal service. Every telecommunications carrier that provides intrastate tele-communications services shall contribute, on an equitable and nondiscriminatory basis, in a manner determined by the State to the preservation and advancement of universal service in that State. A State may adopt regulations to provide for additional definitions and standards to preserve and advance universal ser-vice within that State only to the extent that such regulations adopt additional specific, predictable, and sufficient mechanisms to support such definitions or standards that do not rely on or burden Federal universal service support mechanisms.

47 U.S.C.A. § 254(f). AT&T concludes that, because the claims allowed by section 23-17-404(e)(4)(A) are directly inconsistent with the federal Telecommunications Act, the Arkansas statute is preempted by federal law.

We do not address this argument because AT&T has not shown that it has been aggrieved by Order No. 12. In its brief to this court, AT&T does not specify the four ILECs whose claims it alleges are preempted by federal legislation. Assuming that they are the four ILECs specified by the Commission in Order No. 12, we note that their claims have not been finalized. Order No. 12 directs these ILECs to revise their requests, and there is no further order in the record that shows they were awarded reimbursement after their claims were revised. Because AT&T has not shown that the Commission has allowed these claims, any opinion that this

court might give addressing AT&T's arguments regarding these claims would be advisory. Appellate courts do not render advisory opinions. *See Central Ark. Tel. Coop., supra.*

■ As part of this same point, AT&T also argues that sections 23-17-404(e)(4)(A) and (B) conflict with 47 U.S.C. § 254(f) because these sections are not imposed on a competitively neutral basis. This argument was not made in AT&T's application for rehearing and therefore has not been preserved for appeal. Section 23-2-423(c)(2) provides that no objection to any order of the commission shall be considered by this court unless the objection shall have been urged before the commission in the application for rehearing.

*AT&T's Point No. 3: Order No. 12 is unlawful because it is inconsistent with applicable state statutes and not supported by substantial evidence.*

A significant portion of the Requesting-ILECs' claims for reimbursement from the AUSF concerns reimbursement for revenues that the ILECs no longer receive from the Arkansas IntraLATA Toll Pool (AITP or Toll Pool). Section 23-17-404(e)(4)(B) provides that "[a]ny rural telephone company . . . that, as a result of changes caused by new or existing federal or state regulatory or statutory directives, experiences a change in . . . net revenue received from the . . . Arkansas IntraLATA Toll Pool, shall be allowed to recover such reductions from the AUSF. . . ." AT&T contends that the Commission erred as a matter of law in construing this section to allow the AUSF Administrator to reimburse the Requesting-ILECs for their claims for loss of Toll Pool revenue because their Toll Pool reductions are not the "result of changes caused by new or existing federal or state regulatory or statutory directives," as required by section 23-17-404(e)(4)(B).

In Order No. 12, the Commission addressed AT&T's argument:

> The AT&T witness testified that $9 million of the $9.7 million of approved AUSF support is related to the dissolution of the AITP. AT&T contends that the "voluntary dissolution of the AITP is not a result of changes caused by new or existing, federal

or state regulatory or statutory directives; therefore, any related revenue losses or expenses increases from this action would not be legally eligible for reimbursement with AUSF support under Act 77." T. 151.

> The Requesting ILECs contend that either Act 77 caused the voluntary dissolution of the AITP or the Commission's Order No. 9 in Docket 96—428—U caused the AITP to be dissolved and therefore, their losses are recoverable from the AUSF under Sec. 4(e)(4) of Act 77. The Commission's Order No. 9 in Docket No. 96-428-U did not dissolve the AITP nor did the Order direct any ILEC to cease participation in the AITP. To the extent that Act 77 allows the ILECs to elect alternative regulation and this election triggered the applicability of Sec. 11(f) of Act 77 to AITP participation, Act 77 is the statutory basis for the ILECs' dissolution of the AITP and for the Requesting ILECs' AUSF recovery. Further, Sec. 4 of Act 77 demonstrates a clear legislative intent to subsidize the operation of ILECs through an AUSF supported by all telecommunications customers in the state. Therefore, in keeping with the spirit and intent of Sec. 4 of Act 77, the Commission rejects AT&T's contention that the AITP revenue losses and expenses of the Requesting ILECs are not recoverable from the AUSF.

AT&T, however, focuses on a statement made by the Commission in Order No. 12 that "[t]he losses from the AITP for which the Requesting-ILECs seek reimbursement were occasioned by the voluntary dissolution of the AITP on October 1, 1997," in support of its contention that there is no new or existing federal or state regulatory or statutory directive that caused the Toll Pool to end as required by section 23-17-404(e)(4)(B) for AUSF reimbursement.

 We agree that AT&T is placing too strict a construction on the word "directives" used in section 23-17-404(e)(4)(B). Although a statute should be construed so that no word is void, superfluous, or insignificant, and meaning and effect must be given to every word contained therein, if possible, *see Locke v. Cook*, 245 Ark. 787, 434 S.W.2d 598 (1968), it has also been held that the court will not interpret a statute so strictly as to reach an absurd conclusion that is contrary to legislative intent. *Jackson v. State*, 336 Ark. 530, 986 S.W.2d 405 (1999). The first

rule in considering the meaning of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *McCoy v. Walker*, 317 Ark. 86, 876 S.W.2d 252 (1994). When a statute is ambiguous, we must give effect to the legislative intent. *ACW, Inc. v Weiss*, 329 Ark. 302, 947 S.W.2d 770 (1997). As a guide in ascertaining legislative intent, the appellate court examines the history of the statutes involved, as well as the contemporaneous conditions at the time of their enactment, the consequences of interpretation, and all other matters of common knowledge within the court's jurisdiction. *Vanderpool v. Fidelity & Casualty Ins. Co.*, 327 Ark. 407, 939 S.W.2d 280 (1997); *City of Little Rock v. AT&T Communications of the S.W., Inc.*, 318 Ark. 616, 888 S.W.2d 290 (1994). The interpretation given a statute by the agency charged with its execution is highly persuasive, and while not conclusive, neither should it be overturned unless it is clearly wrong. *See Pledger v. Boyd*, 304 Ark. 91, 799 S.W.2d 807 (1990).

▆▆▆ The Commission interpreted section 4 of Act 77 to allow the Requesting-ILECs to recover from the AUSF their revenue losses that resulted from the dissolution of AITP. We cannot say that its interpretation is clearly wrong. In *Central Arkansas Telephone Cooperative, Inc. v. Arkansas Public Service Commission*, 61 Ark. App. 147, 965 S.W.2d 790 (1998), this court discussed the creation and purpose of the AITP.

> The Arkansas IntraLATA Toll Pool (the Toll Pool) was established by the Commission Order No. 7 in Docket No. 83-042-U to allow local exchange carriers (LECs) to recover their costs of providing intraLATA toll service. Participation in the Toll Pool was required by Order No. 7, and the Toll Pool agreement provided that all LECs would charge their customers uniform rates for intraLATA toll calls and contribute these revenues to the Toll Pool. The Toll Pool then redistributed the revenues to the LECs based on their individual needs, causing some LECs to contribute more to the Toll Pool than their actual expenditures and some LECs to receive more in reimbursements than their contributions to the Toll Pool.

*Id.* at 148–49, 965 S.W.2d at 791. After the enactment of Act 77, the Commission in Order No. 9 of Docket No. 96-428-U held

that the passage of Act 77 made participation in the Toll Pool voluntary and, by operation of law, vacated Order No. 7 of Docket No. 83-042-U, which had created the Toll Pool. The Commission declined to address AT&T's argument that the Toll Pool should be abolished because of the passage of Act 77. Instead, the Commission agreed with Alltel's argument:

> [T]he Commission finds that ALLTEL is correct in stating "the Toll Pool *became* voluntary with the passage of Act 77" and pursuant to Act 77 "the Commission lacks jurisdiction to require participation in the Toll Pool or to establish the intraLATA toll rates charged" by electing ILECs. Therefore, the Commission finds that by operation of law Order No. 7 in Docket No. 83-042-U was vacated effective February 4, 1997, upon enactment of Act 77. AT&T's request to abolish the AITP need not be addressed since the Commission order requiring participation in the AITP was vacated by operation of law. . . .

*Id.* at 152, 965 S.W.2d at 793.[2]

Although AT&T argues here that Act 77 did not cause the Toll Pool reductions, we agree with the Commission's finding that it was the statutory basis for the ILECs' dissolution of the AITP. It is undisputed that, after the enactment of Act 77, Southwestern Bell, Alltel, GTE, and other LECs left the Toll Pool. Furthermore, it is clear that the legislature intended for the Requesting-ILECs to be reimbursed from the AUSF for the losses they suffered as a result of Act 77. Section 4(e) of Act 77 provides that "[t]he Commission shall not, *prior to the implementation and availability of funds from the AUSF*, require any local exchange carrier . . . to reduce its net revenue received from the Arkansas IntraLATA Toll Pool (AITP)." (Emphasis added.)

We find no merit to AT&T's argument that Act 77 cannot be considered as a "new" or "existing" directive, because those terms only include statutes that existed before or after the passage of Act 77. As the Commission correctly points out, com-

---

[2] Although the appellants, eight ILECs, appealed that ruling in *Central Arkansas Telephone, supra,* this court declined to address it, because the appellants had not presented any evidence that they had suffered any prejudice as a result of the Commission's holding and, therefore, the court's opinion would be purely advisory.

mon sense dictates that a statute is either new or existing. If the legislature had intended that no provision of Act 77 could be considered a directive that triggered AUSF funding, it could have included such language.

For its final argument, AT&T contends that the evidence submitted to and relied on by the AUSF Administrator is insufficient to support its determination because it does not meet the criteria of section 23-17-404(e)(4)(C), and even if it does meet the criteria of that section, it does not constitute substantial evidence upon which the Commission could base Order No. 12. This section provides:

> In connection with the receipt of AUSF funds for these changes referred to in subdivisions (e)(4)(A) or (B) of this section, such shall not be conditioned upon any rate case or earnings investigation by the commission. The AUSF administrator shall verify the calculations and accuracy of the net revenue reductions, based on a comparison between (i) the total annual revenues received from these sources by the eligible telecommunications carrier during the most recent twelve (12) months preceding the required regulatory or statutory changes, and (ii) a reasonable projection of total test-year annual revenue after such changes are implemented.

AT&T first argues that, because none of the forms submitted to the AUSF Administrator contained a projection of total test year annual revenue, they do not meet the criteria of this section. We do not address this argument, however, because it is being raised for the first time on appeal. *See Bryant, supra,* 54 Ark. App. at 174, 924 S.W.2d at 482.

AT&T also argues that the Commission lacked substantial evidence to approve the Administrator's determination. It contends that the only information the Administrator considered in verifying the calculations and accuracy of the claimed revenue reductions were the fill-in forms and "form" correspondence submitted by the Requesting-ILECs. AT&T contends that these forms were not sufficiently detailed and did not contain back-up workpapers or other meaningful underlying data to demonstrate the existence, calculation, or validity of the requested AUSF reimbursements. At the hearing, AT&T witness Michael Pauls testi-

fied regarding the lack of documentation supporting the ILECs' reimbursement requests for reductions in intraLATA long-distance billing, pool cash flow changes, access expense and revenue changes, long distance minutes, and lost AUSF funding. Pauls argued that, without verification of the source data underlying the Administrator's determination, it was not possible for anyone to reasonably determine the appropriate level of AUSF support.

█ In response, the Commission argues that the forms, which were submitted under oath, do in fact constitute substantial evidence supporting the Administrator's determination and that the Commission was not required to accept the testimony of Pauls. *See Bryant v. Arkansas Pub. Serv. Comm'n,* 57 Ark. App. 73, 941 S.W.2d 452 (1997). It further argues that, because AT&T has not abstracted the forms that were submitted by the requesting-ILECs to the Administrator, this court cannot determine what information was included and omitted. When an exhibit is necessary to an understanding of the testimony about an issue, but is not included in the abstract, the issue may be summarily affirmed. *Fulkerson v. Calhoun,* 58 Ark. App. 63, 946 S.W.2d 714 (1997).

█ We agree that the abstract presented by AT&T is not sufficient to demonstrate that the evidence before the Commission did not constitute substantial evidence. Without an abstract of the information that was provided to the Administrator, it is not possible for us to determine whether the Commission erred in not finding that the evidence was insufficient to allow the Administrator to verify the "calculations and accuracy" as required by section 23-17-404(e)(4)(C). Furthermore, we also point out that AT&T's argument in its Application for Rehearing that "the AUSF Administrator could not and did not verify the calculations and accuracy of the alleged net revenue reduction in view of the time within which the Administrator made its reimbursement determination and the quality of supporting documentation . . . ," was not sufficient to "set forth specifically the grounds upon which the application is based" as required by section 23-2-422(b). AT&T failed to reference for the Commission and this court specific instances in individual ILECs' requests where it contends that the documentation was insufficient for the Administrator to verify the accuracy and calculations of the requests. Although Pauls testified

generally about insufficient documentation, there is no abstracted testimony where he specified a particular ILEC's request that lacked such information. The Commission in Order No. 12 directed several ILECs to revise their requests, and it also ordered the AUSF to file supporting workpapers. We are unable to determine from AT&T's brief whether Order No. 12 addresses the lack of documentation about which AT&T complains on appeal.

## Cross-Appeal

Cross-Appellants contend that the Commission erred in interpreting Act 77 to make the twelve months ending September 30, 1997, the base test year for purposes of calculating AUSF support. The AUSF Administrator, in making its AUSF reimbursement determinations, used a test year which consisted of the twelve-month period ending December 31, 1996. In Order No. 12, the Commission directed the Administrator to true-up the reimbursement requests based upon revenues using a test year ending September 30, 1997, and adjust the Requesting-ILECs reimbursement requests accordingly.

Section 23-17-404(e)(4)(C) requires the AUSF Administrator to verify the calculations and accuracy of the net revenue reductions submitted by the ILECs, based on a comparison between (i) the total annual revenues received from these sources by the eligible telecommunications carrier during the most recent twelve (12) months preceding the required regulatory or statutory changes, and (ii) a reasonable projection of total test-year annual revenue after such changes are implemented. Cross-Appellants contend that, because the new regulatory directives, including the reductions in Toll Pool revenues, began taking effect after February 4, 1997, when Act 77 was enacted, the "most recent twelve (12) months preceding the required regulatory or statutory changes. . . ." was the December 31, 1996, period that was used by the Administrator. By having the base year end after the enactment of Act 77, Cross-Appellants contend that the Toll Pool participants have the opportunity to manipulate the funding formula, which would be contrary to the legislative intent to create a test year that is unaffected by Act 77's regulatory changes.

Although we agree with Cross–Appellants' statement of legislative intent as to the test year, we do not agree that the Commission's revised September 30, 1997, test year conflicts with that intent. Order No. 12, which required the true-up reflecting a test-year ending September 30, 1997, was entered February 4, 1998, after any manipulation to the September 30, 1997, test year could occur. Furthermore, the Toll Pool is no longer operational, and therefore, there is no future possibility of manipulation of the Toll Pool. The Commission in Order No. 12 explained in detail its reasons for using a September 30, 1997, test year to true-up the reimbursement requests:

> AITP reports for the twelve (12) month period ending September 30, 1997, will more accurately meet the requirement in Act 77 of a test year reflecting the most recent twelve months preceding the "regulatory changes." The election of alternative regulation pursuant to Act 77 by the majority of ILECs changed the AITP from a mandatory pool to a voluntary pool. See Act 77, section 11(f). The ILECs continued to voluntarily maintain uniform toll rates and voluntarily continued participation in the AITP until October 1, 1997, when the larger ILECs withdrew from the AITP. T. 64. The losses from the AITP for which the Requesting ILECs seek reimbursement were occasioned by the voluntary dissolution of the AITP on October 1, 1997. The most recent test year preceding the voluntary dissolution of the AITP would be the twelve months ending September 30, 1997, when those reports are finalized. The Administrator is hereby directed to true-up reimbursement requests based upon AITP revenues using a test year ending September 30, 1997, by no later July 1, 1998, and adjust the Requesting ILECs reimbursement requests accordingly.

Order No. 12 at 5–7. Section 23-17-404(e)(4)(C) requires that the Administrator use revenue figures during the *"most recent"* twelve (12) months preceding the required regulatory or statutory changes. We agree that the language of subsection (i) supports the Commission's decision to use the September 30, 1997, test year.

Affirmed on direct appeal and cross-appeal.

PITTMAN, HART, BIRD, MEADS, and ROAF, JJ., agree.