The Honorable Ed Wilkinson State Senator Post Office Box 610 Greenwood, Arkansas 72936-0610
Dear Senator Wilkinson:
I am writing in response to your request for an opinion on the following facts and related question:
 The City of Barling is in the process of hiring a Police Chief. The applicant that the City wants to hire served 20 years in another municipality and participated in the LOPFI[1] DROP for three months before terminating employment. However, certain state officials have told the City that ACA § 24-11-434(c)(1) appears to prohibit the City from hiring him because of his participation in the DROP. ACA § 24-11-434(c)(1) does not define the phrase, "at the conclusion of a member's participation in the plan . . ." and pursuant to ACA 24-11-434(h), a participant is not entitled to any benefits under the plan unless he or she participates in the plan for a minimum of one year. In your opinion, can the City hire this applicant?
It is my understanding that the applicant in question retired from the police department of another municipality in 1996, was a member of that municipality's local pension plan and has been receiving retirement benefits from that plan in the intervening ten years.
RESPONSE
In my opinion the answer to your question is "no," the City of Barling, under current law, may not hire this applicant.
Section 24-11-434 of the Arkansas Code creates the "Deferred Retirement Option Plan" or "DROP" for police officers in local police pension funds in cities of the first class. The "DROP" option is a retirement option available to a member of the local pension plan who has at least twenty years of credited service and is eligible to receive a service retirement pension. A.C.A. §24-11-434(a)(1). Under the terms of the Plan, the member will continue to work and receive a salary, but the monthly pension benefit to which the member would have been entitled if he or she had actually retired will be paid into the "plan account." Id.
(d)(3). When the police officer separates from service, the member typically receives either a lump sum or a "true annuity" based upon the account. Id. at (f)(1).
For purposes of your question, the applicable statute provides in pertinent part as follows:
 (a)(1) In lieu of terminating employment and accepting a service retirement pension pursuant to § 24-11-401 et seq., any police officer who is a member of a policemen's pension and relief fund who has not less than twenty (20) years of credited service and who is eligible to receive a service retirement pension may elect to participate in the Arkansas Police Officers' Deferred Option Plan and defer the receipt of benefits in accordance with the provisions of this section, provided that the board of trustees of the local policemen's pension and relief fund approves the participation in the plan.
 * * *
 (b)(1) The duration of participation in the plan for active police officers shall not exceed five (5) years.
 (2) The five-year limit may be extended if:
 (A) The extension does not cause the limit to exceed ten (10) years;
 * * *
 (c)(1) Except under subdivision (c)(2) of this section, at the conclusion of a member's participation in the plan, the member shall terminate employment with all participating municipalities as a police officer and shall start receiving the member's accrued monthly retirement benefit from the policemen's pension and relief fund.
 (2) If a member is at the conclusion of a member's participation in the plan, the member may continue employment by a municipality under the following conditions:
 (A) The municipality makes continued employment available to all similarly situated members;
 (B) The availability of continued employment is approved by a majority vote of the governing body of the sponsoring municipality after receiving approval for an increase in benefits under § 24-11-102;
 (C) The monthly benefit that is credited to the member's plan account is discontinued and the member shall not receive a monthly benefit until the member actually ceases employment;
 * * *
 (h) A participant in the plan shall not receive any benefits under the plan unless he or she participates in the plan for a minimum of one (1) year, absent death or disability.
 (i)The Arkansas Fire and Police Pension Review Board may promulgate regulations to make the plan under this section comply with the requirements of this section and with the applicable portions of the federal Internal Revenue Code, as it existed on January 1, 2003.
The restriction found in subsection (c)(1) was originally adopted in 1993 (see Acts 1993, No. 757). It is clear, in my opinion, as an initial matter, that subsection (c)(1) prohibits a police officer who participated in the DROP program of a local police pension plan from being re-employed by a "participating municipality" after he completes the five or ten years of DROP participation.[2] This was the conclusion of Op. Att'y Gen.99-078 (opining, under the similar language of A.C.A. §24-11-830(c)(2) for firefighters participating in local DROP plans, that "a city civil service commission may not rehire a fire chief who retired, participated in, and completed the Deferred Retirement Option Plan"). See also, Jackson v.Blytheville Civil Service Commission, 345 Ark. 56, 43 S.W.2d 748
(2001) (holding, similarly, that A.C.A. § 24-11-830 prohibited a DROP participant (firefighter), who completed five years in the DROP program from returning to work, and that the A.C.A. §24-11-830 restriction controlled over the more liberal provisions of A.C.A. 24-11-827, regarding re-employment, which the court held did not apply to firefighters who participated in DROP).See also, Op. Att'y Gen. 2002-321 (firefighters and police officers who have completed the DROP period under A.C.A. §24-11-830 and § 24-11-434, respectively, may not return to work, regardless of whether they have received a DROP distribution).
Your question contains a slight twist on the issues addressed above, in that the police officer you describe did not complete the entire five-year DROP period. You state instead that the officer participated in DROP for "three months before terminating employment." The issue is therefore whether the A.C.A. §24-11-434(c)(1) restriction, set out above, prohibits the officer from returning to work, even though he participated only briefly in the DROP program and presumably did not receive any benefits therefrom. Again, subsection (c)(1) states that "at theconclusion of a member's participation in the plan, the member shall terminate employment with all participating municipalities as a police officer and shall start receiving the member's accrued monthly retirement benefit from the policemen's pension and relief fund." (Emphasis added).
You have placed emphasis on the fact that "A.C.A. §24-11-434(c)(1) does not define the phrase `at the conclusion of a member's participation in the plan. . . .'" You also note that under A.C.A. § 24-11-434(h), a DROP participant shall not receive any benefits unless he or she participates in the plan for a minimum of (1) year (absent death or disability). Your question is whether an individual such as you describe may therefore be hired by another participating municipality.
Again, in my opinion, under current law, the answer is "no." Although subsection (c)(1) of A.C.A. § 24-11-434 does not define the phrase "at the conclusion of the member's participation in the plan," a relevant rule of the Arkansas Fire and Police Pension Review Board does define a similar phrase. As set out above, subsection (i) of A.C.A. § 24-11-434 gives this Board the power to make regulations to ensure compliance with the statute. Rule 10, § 8(A) provides as follows:
 Time of Conclusion of the DROP Period. The DROP period will conclude at the termination of employment but no later than five years after the date that the individual member began participation in the DROP. Termination of employment means leaving the employment of the department for any reason. The DROP period may be extended to 10 years for certain police plans or fire plans as defined in Section 13 of this Rule.
Id. (Emphasis added).
As my predecessor stated in Op. Att'y Gen. 2000-268:
 . . . it is my opinion that the Fire Police Pension Review Board's interpretation of this issue is entitled to considerable deference. The Arkansas courts have consistently held that an interpretation given to a statute by the agency charged with its execution is highly persuasive, and while it is not conclusive, neither should it be overturned unless it is clearly wrong. Southwestern Bell Tel. v. Ar. Pub. Ser., 69 Ark. App. 323, S.W.3d ___ (2000); Southwestern Bell v. Ar. Pub. Ser., 68 Ark. App. 148, 5 S.W.3d 484 (1999); ATT Comm. v. Arkansas Pub. Ser. Comm., 67 Ark. App. 177, 994 S.W.2d 494
(1999); Arkansas State Med. Bd. v. Bolding, 324 Ark. 238, 920 S.W.2d 825 (1996); Douglass v. Dynamic Enterprises, Inc., 315 Ark. 575, 869 S.W.2d 14
(1994); Junction City Sch. Dist. v. Alphin, 313 Ark. 456, 855 S.W.2d 316 (1993); Brimer v. Arkansas Contractors Licensing Bd., 312 Ark. 401, 405, 849 S.W.2d 948 (1993); Pledger v. Boyd, 304 Ark. 91, 799 S.W.2d 807 (1990); Arkansas Department of Human Services v. Green Acres Nursing Homes, Inc., 296 Ark. 475, 757 S.W.2d 563 (1988); Arkansas Contractors Licensing Bd. v. Butler Const. Co., Inc. of Barling, 295 Ark. 223, 748 S.W.2d 129 (1988); Ragland v. Arkansas Writers' Project, Inc., 287 Ark. 155, 697 S.W.2d 94 (1985), reh denied, 287 Ark. 155, 698 S.W.2d 802; Morris v. Torch Club, 278 Ark. 285, 645 S.W.2d 938 (1983).
 The Arkansas Fire Police Pension Review Board is charged with the responsibility of making rules and regulations for the enforcement of the laws governing local fire and police pensions. A.C.A. § 24-11-203(j)(1). Its interpretation of its rules and of the laws that those rules enforce will be upheld unless that interpretation is clearly wrong. I find nothing in the Board's interpretation of the DROP statute that conflicts with the statute or is otherwise clearly wrong.
Id. at 2.
Similarly, the Arkansas Fire and Police Pension Review Board has been granted specific authority to adopt rules governing the DROP program for police pensioners. A.C.A. § 24-11-434(i) (Supp. 2005). As a consequence, Rule 10, subsection 8(A), governing the time of the conclusion of the DROP period, will be controlling unless it is "clearly wrong." I cannot state, in light of the statutory language, that this portion of Rule 10 is "clearly wrong."
In my opinion, therefore, under current law, Rule 10, § 8(A), which represents the interpretation of the Arkansas Fire and Police Pension Review Board, would be upheld by a court faced with the question. Under this interpretation, the conclusion of the DROP period occurs at the termination of the participant's employment, notwithstanding that he did not participate the full five years. As a consequence, under current law, a DROP participant must terminate all employment with participating municipalities when his DROP-related employment terminates, even if that DROP period ends before the full five or ten years required for DROP completion and even if the DROP participant is prohibited from receiving any DROP benefits by virtue of A.C.A. §24-11-434 (h). As noted by the Arkansas Supreme Court in Jacksonv. Blytheville Civil Service Commission, supra: "The DROP program provides an option to normal retirement benefits, and Jackson elected to participate in DROP. Thus, he was subject to the precise terms of § 24-11-830." Id. at 61-62. The court also discounted the usual maxim that statutes regarding retirement and pension plans should be liberally construed to favor retirees, by stating: ". . . with regard to the principle of liberal construction of pension statutes in favor of those benefitted, [sic] we agree with the Commission that deferred income plans, which necessarily involve deferred income taxes, must comply with statutory mandates or else run the risk of nonqualification with the Internal Revenue Service." Id.
As a consequence, in my opinion, the applicant you describe may not be hired by a "participating municipalit[y]" under current law.
One final point should be mentioned. As set out above, subsection (c)(2) of A.C.A. § 24-11-434, which was added to the statute in 2003, allows the continued employment of DROP pensioners under certain limited conditions. It appears, however, to apply only to DROP pensioners who make the decision to remain employed "at the conclusion of [a] member's participation in the plan." The subsection states that "[i]f a member is at the conclusionof a member's participation in the plan, the member maycontinue employment by a municipality under the following conditions. . . ." (Emphasis added). This language appears to require the decision to remain employed to be made contemporaneously with the "conclusion of the member's participation in the plan." Although it is not entirely clear, it also may contemplate continued employment with the same municipality. Because the applicant you describe concluded participation in the DROP plan some ten years ago, and seeks re-employment with a different municipality, the language of subsection (c)(2) appears inapplicable to the situation at hand.
In my opinion, therefore, the answer to your question is "no," the City of Barling may not hire this applicant under current law.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:ECW/cyh
[1] "LOPFI" is the acronym for the Local Police and Fire Retirement System governed by A.C.A. §§ 24-10-101 to -619 (Repl. 2002 and Supp. 2005). It was created in 1981 and generally covers police and firefighters first employed after the "operative date" of the system. See A.C.A. § 24-10-301. The LOPFI System was amended in 2003 to add a "DROP" option. See A.C.A. § 24-10-701
— 709 (Supp. 2005). Because the police officer to whom you refer was apparently employed for twenty years by another municipality and participated in the DROP program you describe prior to the end of such service in 1996, I assume that the police officer at issue participated in a local municipal police pension "DROP" program under A.C.A. § 24-11-434 and not the "LOPFI" DROP program created at A.C.A. § 24-10-701-709, which was only created in 2003.
[2] A limited exception was added later in subsection (c)(2), which will be discussed infra.