# SOUTHWESTERN BELL TELEPHONE COMPANY, *et al. v.* ARKANSAS PUBLIC SERVICE COMMISSION

CA 98-881       ·                                 5 S.W.3d 484

Court of Appeals of Arkansas
Divisions I and II
Opinion delivered December 1, 1999

*Timothy S. Pickering;* and *Skinner & Thomas,* by: *H. Edward Skinner,* for appellant Southwestern Bell Telephone Company.

*Wright, Lindsey & Jennings LLP,* by: *N.M. Norton* and *J. Mark Davis,* for appellee AT&T Communications of the Southwest, Inc.

*Paul Ward,* for appellee Arkansas Public Service Commission.

JOSEPHINE LINKER HART, Judge. In this appeal, we review the Arkansas Public Service Commission's interpretation of a part of Act 77 of 1997, the Telecommunications Regulatory Reform Act of 1997, codified at Ark. Code Ann. §§ 23-17-401—412 (Supp. 1997). Twenty-six incumbent local exchange carriers (ILECs), sixteen of which are the appellants herein, filed a motion to have the Commission vacate Order No. 7 of Docket No. 93-142-U. The Commission refused and assessed civil sanctions against the appellants for knowingly violating Act 77 and other Commission orders. We find no error and affirm.

Order No. 7 approved a joint petition filed by the general staff of the Arkansas Public Service Commission (Staff) and a number of local exchange carriers, requesting that the Commission approve a plan to reduce intraLATA toll rates.[1] In Order No. 7, the Commission approved a reduction in intraLATA toll rates of approximately $10 million and designated that $4.8 million of that amount be used to reduce the carrier common line (CCL) access charges paid by the interexchange carriers (IXCs) and other non-LECs to the LECs. The $4.8 million reduction in CCL charges approved in Order No. 7 was implemented by the LECs through a credit on the bills issued to the IXCs by the Administrator of the Arkansas Intra-state Carrier Common Line Pool (AICCLP).

The Telecommunications Regulatory Reform Act, Act 77, allowed incumbent local exchange carriers (ILECs) to elect alternative regulation and exempted them from a number of statutory requirements, including the authority of the Commission to fix intraLATA toll rates, Ark. Code Ann. § 23-3-114. Relying on Act

---

[1] IntraLATA toll rates are a portion of the long distance rates that a customer is charged to make a long distance (toll) call. Part of these rates known as Common Carrier Line (CCL) charges are made up of access charges that the LECs assess the interexchange carriers (IXCs) for the IXCs' use of the LECs' facilities in the origination and termination of long-distance calls. *See Southwestern Bell Tel. Co. v. Arkansas Pub. Serv. Comm'n,* 58 Ark. App. 145, 946 S.W.2d 730 (1997).

77 and Commission Order No. 9 entered in separate Commission Docket No. 96-428-U[2], the appellants that were in attendance at the October 6, 1997, Steering Committee Meeting of the Arkansas IntraLATA Toll Pool, instructed AICCLP Administrator Wayne Gatlin to remove the credits from the interexchange carriers' (IXCs') bills beginning October 1997. Twenty days later, the appellants filed a petition with the Commission to vacate Order No. 7.

In their petition to vacate, appellants claimed that the enactment of Act 77 removed the Commission's authority to mandate uniform statewide toll rates and, therefore, there is no longer any authority or need for the AICCLP to subsidize the IXCs' toll rates. Although Staff initially agreed that the Commission lacked the authority to enforce the $4.8 million credit after the passage of Act 77, it changed its position and argued along with several IXCs that section 4(D) of Act 77, section 23-17-404(e)(4)(D), precluded any changes in the AICCLP prior to three years after the effective date of Act 77. This section provides: "Except as provided in this paragraph, the intrastate Carrier Common Line (CCL) Pool charges shall continue as effective on December 31, 1996." Although all the parties at the hearing agreed that this section froze the "CCL Pool charges" for the next three years, they disagreed over whether the Order No. 7 credits were included in the phrase "CCL Pool charges." In Order No. 4, the Commission held that the $4.8 million credits are included in the phrase "CCL Pool charges" and that Act 77 freezes the level of the CCL pool charges for a period of three years.

For their first point on appeal, the appellants contend that the Commission acted unlawfully and failed to regularly pursue its authority by requiring the appellants to continue to apply the credits established by Order No. 7. They contend that the phrase "intrastate Carrier Common Line (CCL) Pool charges," which appears in section 23-17-404(e)(4)(D), does not include the credits implemented in Order No. 7 and dispute the Commission's holding that the phrase is plain and unambiguous.

---

[2] In Order No. 9, the Commission held that section 11(f) of Act 77 exempts the ILECs from a number of statutory requirements, including section 23-3-114, and the ILEC deregulatory election provisions in conjunction with the section 11(f) exemptions of Act 77 superseded and vacated the Commission order that required mandatory participation of the ILECs in the AITP.

▬▬ This court's review of appeals from the Arkansas Public Service Commission is limited to determining whether the Commission's findings of fact are supported by substantial evidence, whether the Commission has regularly pursued its authority, and whether the order under review violated any right of the appellant under the laws or the Constitutions of the State or Arkansas or the United States. Ark. Code Ann. § 23-2-423(c)(3), (4), and (5) (1987); *Bryant v. Arkansas Pub. Serv. Comm'n*, 55 Ark. App. 125, 931 S.W.2d 795 (1996). In *AT&T Communications of the Southwest, Inc. v. Arkansas Public Service Commission*, 67 Ark. App. 177, 994 S.W.2d 494 (1999), where this court reviewed an interpretation the Commission had given to another part of Act 77, this court noted:

> The first rule in considering the meaning of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. When a statute is ambiguous, we must give effect to the legislative intent. As a guide in ascertaining legislative intent, the appellate court examines the history of the statutes involved, as well as the contemporaneous conditions at the time of their enactment, the consequences of interpretation, and all other matters of common knowledge within the court's jurisdiction. The interpretation given a statute by the agency charged with its execution is highly persuasive, and while not conclusive, neither should it be overturned unless it is clearly wrong.

*Id.* at 189-90, 994 S.W.2d at 502 (citations omitted).

The appellants and the other parties to the docket asserted at the hearing, and agreed on appeal, that the phrase "CCL Pool charges" as used in Act 77 should be interpreted in light of the Intrastate Flat Rate CCL Service Tariff (Tariff). The Tariff contains the rates and regulations that apply to the administration of the Intrastate Flat Rate (IFR) Carrier Common Line (CCL) Service and includes three pages of definitions, although it does not define the term "charges." The third paragraph of section three of the Tariff, labeled "General Description," contains the language on which the Commission relied in holding that the term "CCL Pool charges" includes the Order No. 7 credits:

> The amount of the IFR CCL charges to the carriers shall be designed to recover the aggregate intrastate CCL revenue requirement. The CCL revenue requirement may include: 1) the sum of CCL revenue requirements in the intrastate CCL revenue require-

ments in the intrastate jurisdiction for each LEC in accordance with the allocation procedures...; 2) the aggregate AUSF requirements of the eligible LECs as provided for in the AUSF tariff; 3) the direct expenses incurred by the AICCLP Administrator for billing and collecting the IFR CCL charge; 4) other Commission ordered charges and credits and 5) revenue requirement claims. All such amounts shall be subject to annual approval by order of the Commission. The AICCLP Administrator shall use the approved amounts until they are superseded by subsequent Commission order.

Appellants argue that the first sentence of this paragraph defines CCL charges as revenue requirements and that the components listed in the second sentence should not be included as charges because this sentence uses the word *may* rather than the mandatory *shall*. In Order No. 4, the Commission explained why it could not accept appellants' interpretation that "CCL Pool charges" was synonymous with "revenue requirement."

> In an attempt to explain away the tariff language cited by Staff and AT&T, SWBT [Southwestern Bell Telephone Company] appears to contend that only the first sentence of the third paragraph of the IFR CCL Service tariff is relevant to determining the CCL charge frozen in Act 77. That sentence provides that "CCL charges to the carriers shall be designed to recover the aggregate intrastate CCL revenue requirement." IFR CCL Tariff, 4th Revised Sh. 4. SWBT then explains that the next sentence should be read as, "The CCL revenue requirement may include: 1) the sum of the CCL revenue requirements in the intrastate jurisdiction for each LEC in accordance with the allocation procedures ... directed by Order No. 14 in Docket No. 90-133-U" and items 2 through 5 which the tariff says may be in the revenue requirement, should be ignored as never having been in the calculation of revenue requirement....

> SWBT's explanation neglects to explain why the AICCLP Administrator utilized items 2 through 5 in calculating the CCL charge prior to December 31, 1996....

> The items which the AICCLP Administrator includes in the calculation of carrier bills are the same components of the CCL revenue requirement which Section 3 of the tariff states the CCL charge is designed to recover. SWBT fails to explain why the CCL charges include "credits approved by the Commission" as a component of the CCL revenue requirement and calculation of the

> CCL charge in the tariff but should be ignored when Act 77 refers to "CCL Pool charges."
>
> . . . .
>
> The plain language of Act 77 and the IFR CCL tariff does not support the ILECs Motion. Ark. Code Ann. section 23-17-404(e)(4)(D) requires that CCL pool "charges" shall remain as effective on December 31, 1996, for a period of three years. The CCL pool charges effective on December 31, 1996, and billed to the IXCs included "4) other Commission ordered charges and credits." IFR CCL Tariff 4th Revised Sh. 4 at Sec. 3. In addition, the IFR CCL tariff requires that the AICCLP Administrator use the approved amounts including the credits "until they are superseded by subsequent Commission order." *Id.* The credits included in the CCL charge which was in effect on December 31, 1996, were the credits ordered in Docket No. 93-142-U. It was not necessary to specifically reference those credits as a component of the CCL pool charge in Ark. Code Ann. section 23-17-404(e)(4)(D) to give effect to the tariffed charge including the credits which was billed to IXCs on December 31, 1996, and frozen for a three year period.

Order No. 4 at 8-9. The Commission also noted that the ILECs' contention that Act 77's freeze of the AICCLP charges applies only to the CCL gross revenue requirements would be greatly helped if the General Assembly said "revenue requirements" instead of using the phrase "CCL pool charges." Appellants have not challenged the Commission's holding that the credits were included in the IFR CCL tariff in effect on December 31, 1996, and February 4, 1997, the effective date of Act 77.

■ Appellants cite several references in the Tariff where the words "revenue requirement" do not include all or some of the five components listed in paragraph 3 of section 3, 4th Revised Sheet 4. To discuss each such instance would unduly lengthen this opinion and serve no purpose. Suffice it to say that we have considered the Tariff in its entirety and cannot agree that the Commission's interpretation of "CCL Pool charges" to include the Order No. 7 credits is clearly wrong.

In Order No. 4 the Commission assessed a civil sanction of $1,000 against each ILEC present at the AITP Steering Committee Meeting for knowingly violating Act 77 and Commission orders in

Docket Nos. 86-159-U and 93-142-U. Appellants contend that this action was unlawful because the orders the Commission found that they had violated have been superseded by Act 77 and there is no substantial evidence to show that they willfully violated Act 324. We disagree.

The Commission assessed sanctions against the appellants that were present at the Steering Committee meeting after finding that the appellants agreed and decided to implement a plan to terminate the credits allowed by Order No. 7 by instructing the AICCLP Administrator to cease applying the credits to the non-ILEC CCL bills. The AICCLP Administrator in accordance with appellants' instructions increased the CCL Pool charges in October. The ILECs waited until after the increase had been billed and on October 24 filed a motion seeking the Commission's approval of the action that they had already taken; that motion did not acknowledge their prior implementation of their decision to discontinue the credits without the benefit of a Commission order. The Commission held:

> In directing the AICCLP Administrator to increase CCL charges through the discontinuation of the credits, the ILECs did violate Act 77, Order No. 7 in Docket No. 93-142-U, the AIC-CLP tariff and the Commission orders in Docket No. 86-159-U approving the currently effective tariff. From the minutes of the AITP Steering Committee, it is apparent that the ILECs made the decision knowing that the action they were taking required prior Commission approval. In addition, the ILECs directed the AIC-CLP Administrator to take action contrary to the IFRCCL tariff which requires that the AICCLP Administrator not change the amounts used to calculate the CCL charge without a Commission order approving the change. The minutes of the AITP Steering Committee which are Staff Ex. 2 reflect the ILECs "knowingly, willfully and purposefully" committed the violations.
>
> .... Each ILEC having a representative present at the AITP Steering Committee meeting held on October 9, 1997 (Staff Ex. 2), is hereby assessed a civil sanction of $1,000.00 pursuant to Ark. Code Ann. section 23-1-103 for violating Act 77 and knowingly violating Commission orders in Docket No. 86-159-U and 93-142-U.

Appellants first argue that Ark. Code Ann. § 23-1-103 (1987) does not provide the Commission with authority to access sanctions

against them for violating section 4(D) of Act 77. This statute provides in pertinent part:

> (a) Every public utility and every person or corporation shall obey and comply with every requirement of this act and of every order, decision, direction, rule, or regulation made or prescribed by the commission in the matters specified or any other matter in any way relating to or affecting the business of any public utility. The commission shall do everything necessary or proper in order to secure compliance with, and observance of, every order, decision, direction, rule, or regulation by all officers, agents, and employees of every public utility.

> (b)(1) Upon a finding by the commission that any jurisdictional water, gas, telephone, or electric public utility has knowingly, willfully, and purposefully violated any of the provisions of this act, by agent or otherwise, the commission shall assess a civil sanction of one thousand dollars ($1,000) on the utility.

Appellants contend that subsection (b)(1)'s reference to "this act" refers to Act 324 of 1935 and any subsequent legislative act which amends or has amended Act 324 and that, because nothing in Act 77 suggests that it was intended to amend or be a part of Act 324 for purposes of section 23-1-103, the Commission has no authority to assess sanctions against them for violation of Act 77.

It is clear from Order No. 4 that, in assessing sanctions against appellants, the Commission did so for appellants' violation of Order No. 7 of Docket No. 93-142-U and the Tariff orders of Docket No. 86-159-U as well as Act 77. Assuming without deciding that the Commission was without authority to assess sanctions for Act 77 violations, section 23-1-103(a) clearly gives the Commission authority to assess sanctions for violations of Order No. 7 and the Tariff orders. This section provides that every public utility shall obey and comply with every order made or prescribed by the Commission relating to or affecting the business of the public utility. The "orders" referred to in section 23-1-103(a) are not restricted to any particular act, but rather this section requires every public utility to obey and comply with every Commission order in any way relating to or affecting the business of a public utility. Although appellants argue that they are no longer required to comply with Commission Order No. 7 and the Tariff orders because Ark. Code Ann. § 23-3-114 (1987) was eliminated by Act 77, we do not find this argument persuasive. Order No. 7 and the Tariff

orders resulted from a joint stipulation of the parties, which the Commission was urged to adopt. No reference to section 23-3-114 is made in them. Therefore, we cannot agree that Act 77's elimination of section 23-3-114 nullified those orders.

■ Furthermore, Ark. Code Ann. § 23-2-421(c)(1) (1987), a provision of Act 324, provides that an order shall take effect and become operative immediately upon the service thereof, unless otherwise provided, and shall continue in force either for a period which may be designated therein or until changed or revoked by the Commission, or vacated upon review. As the Commission noted in Order No. 4, the appellants that were assessed sanctions for failure to comply with Order No. 7, ceased compliance before they sought revocation of Order No. 7 by the Commission. Appellants have not demonstrated that the Commission was without authority to assess sanctions against them.

Appellants also argue that there is not substantial evidence to support a Commission finding that the appellants with representatives present at the AITP Steering Committee meeting "knowingly, willfully, and purposefully" violated Order No. 7 and the Tariff orders. They contend that, because section 23-1-103(b)(1) is penal in nature, it should be strictly construed, and, if this is done, it is clear that their conduct did not constitute a knowing, willful, and purposeful violation of Act 324. In support of their argument, they rely on *St. Louis, Iron Mountain & Southern Railway Co. v. Batesville & Winerva Telephone Co.*, 80 Ark. 499 (1906), where the supreme court held that the words "wilfully and intentionally" in a criminal statute mean more than a mere doing voluntarily or knowingly the act in question:

> The use of the term "willful," and in this case almost its synonym "intentional," in a criminal or penal statute "implies knowledge and a preference to do wrong." They mean in such statutes, "not merely voluntarily, but with a bad purpose." "An evil intent without justifiable excuse." "Doing or omitting to do a thing knowingly and wilfully implies not only a knowledge of the thing, but a determination with a bad intent to do it or omit to do it."

*Id.* at 504 (citations omitted). Appellants point out that the *St. Louis* decision was handed down before the passage of Act 324 of 1935, and therefore, it must be presumed that the legislature was aware of the supreme court's definition of "willful" when it used the word

"willfully" in the act and intended that definition. *See Scarbrough v. Cherokee Enterprises*, 306 Ark. 641, 816 S.W.2d 876 (1991). Appellants conclude that their conduct in discontinuing the credits does not evince evil intent, bad purpose, or a preference to do wrong.

We cannot agree that it was necessary for the Commission to find "evil intent" in order to find that the appellants willfully violated section 23-1-103(b). In *Steward v. Thomas*, 222 Ark. 849, 853, 262 S.W.2d 901 (1953), the supreme court held that "willful misconduct" depends upon the facts of a particular case and necessarily involves deliberate, intentional, or wanton conduct in doing or omitting to perform acts, with knowledge or appreciation of the fact, on the part of the culpable person, that danger is likely to result therefrom. In *Trans Union Corporation v. Crisp*, 49 Ark. App. 76, 82, 896 S.W.2d 446, 449 (1995), this court held that "[t]o be found in willful noncompliance, a defendant must have 'knowingly and intentionally committed an act in conscious disregard for the rights of others.'" (quoting *Stevenson v. TRW, Inc.*, 987 F.2d 288, 293 (5th Cir. 1993)).

In finding that the appellants willfully violated Act 324, the Commission referenced the Steering Committee minutes and emphasized the fact that the ILECs' motion to vacate Order No. 7 was not filed until after they had discontinued the credits. Further, the appellants did not mention in their motion that they had already discontinued the credits. Larry Walther, Executive Director—Regulatory and Industry Relations for SWBT, testified that Wayne Gatlin, the AICCLP Administrator, reports directly to him and that he directed Mr. Gatlin to remove the credits. He admitted that the IXCs were not consulted prior to the credits being eliminated and that the IXCs' first notice of the appellants' actions was by an insert in their CCL invoices. He stated that his authority for discontinuing the credits was his interpretation of Act 77. When asked why he and the other LECs bothered to file their motion to have Order No. 7 vacated, he responded: "Well, I guess we thought it appropriate.... I — I guess to notify the Commission of our intent, to make sure that it was their interpretation also and that's why we're here today." The pertinent portion of the Steering Committee minutes provide:

> With that, the discussion moved to the 1.6M annual credits that are being flowed to from the AITP (LECs) to the IXCs through the

AICCLP. After some discussion about the remaining pool membership, and questions about continuing obligations to pay the credits, Wayne was instructed not to flow the money to the AICCLP and have Larry Chisenhall draft a motion to seek clarification from the APSC on whether the credits are still due, or not. Wayne is to notify the IXCs that the credits are not being issued, and that the LECs are seeking a ruling from the commission on the continuation of the credits. The committee agreed to an AICCLP tariff change making the obligation of the AITP for the credits zero.

After reviewing the evidence before the Commission, we cannot say that the Commission's finding that the appellants willfully violated Act 324 and its decision to assess sanctions against the appellants that had members present at the Steering Committee is not supported by substantial evidence. In order to prove that a Commission decision is not supported by substantial evidence, the appellant must show that the proof before the Commission was so nearly undisputed that fair-minded persons could not reach the conclusion the Commission did. *See AT&T Communications of the S.W. v. Arkansas Pub. Serv. Comm'n*, 40 Ark. App. 126, 843 S.W.2d 855 (1992). Appellants have not met this burden.

Affirmed.

JENNINGS, BIRD, STROUD, MEADS, and ROAF, JJ., agree.