SOUTHWESTERN BELL TELEPHONE COMPANY *v.*
ARKANSAS PUBLIC SERVICE COMMISSION

CA 98-1249                                    13 S.W.3d 197

Court of Appeals of Arkansas
Divisions IV and I
Opinion delivered March 22, 2000

*Timothy S. Pickering* and *Skinner & Thomas*, by: *H. Edward Skinner*, for appellant.

*Stephen Rowell* and *Friday, Eldredge & Clark*, by: *Kevin A. Crass*, for appellee Alltel Arkansas, Inc.

JOHN B. ROBBINS, Chief Judge. Appellant, Southwestern Bell Telephone Company (SWBT), brings this appeal from Order No. 7, entered by the Arkansas Public Service Commission in Docket No. 97-436-U. Appellant contends that the Commission failed to regularly pursue its authority by holding that the Access

Service Tariff Revisions, filed by appellant on November 26, 1997, violated Ark. Code Ann. § 23-17-407(a) (Supp. 1997). Appellant also contends that the Commission erred in holding that appellant's switched-access service tariff, which was on file twelve months before it elected alternative regulation, is applicable to the switched-access service it provides to other local exchange carriers (LECs). We find no error and affirm.

On November 26, 1997, appellant filed with the Commission additions to its intrastate access tariff. These additions contained a new tariff section, which set a specific traffic-sensitive per-minute-of-use rate for access provided by appellant to other incumbent local exchange carriers (ILECs), but further provided that, if the other ILECs assessed appellant a higher rate for similar traffic, appellant would charge that ILEC a reciprocal rate equal to the rate charged by that ILEC to appellant.

The Staff of the Arkansas Public Commission (Staff) responded to appellant's new tariff by petitioning the Commission to determine whether its reciprocal rate provision violates section 7(a) of the Telecommunications Regulatory Reform Act of 1997 (Act 77). This section of the act is codified at section 23-17-407(a) and provides in part:

> The rates for basic local exchange service and switched-access services that were in effect in the date twelve (12) months prior to the date of filing of a notice of election by a local exchange carrier pursuant to § 23-17-406 shall be the maximum that such electing local exchange carrier may charge for such services for a period of three (3) years after the date of filing, excluding rate increases ordered by the commission pursuant to § 23-17-404....

Because appellant had elected alternative regulation on February 4, 1997, Staff contended that any switched-access service rates that appellant charges in excess of the switched-access rates it charged on February 4, 1996, would violate section 23-17-407(a). It further contended that the reciprocal rate provision included in appellant's new tariff would cause it to exceed its February 1996 switched-access service rates, because the other ILECs have switched-access rates greater than appellant's February 1996 access rates.

Appellant acknowledged that its reciprocal rate provision could cause it to charge other ILECs rates that exceed its February 1996 rates but denied that the February 1996 rates were applicable to its new tariff or that its new tariff violated section 23-17-407(a). It contended that its new tariff was not subject to section 23-17-407(a)'s rate cap because the access service it provided to other ILECs was not "switched-access service" as defined by Act 77. Act 77 defines "[s]witched-access service" as the "provision of communications between a customer premise and an interexchange carrier's point of interconnection with a local exchange carrier's network for the completion of end user calls to the public switched network for the origination or termination of interexchange long distance traffic." Ark. Code Ann. § 23-17-403(23) (Supp. 1997). Appellant contended that, because it is not an "interexchange carrier," its transfer of a toll call through it switching facilities for another ILEC does not meet the statutory definition of "switched-access service," and, therefore, its reciprocal rate provision does not violate section 23-17-407(a). It contended that the term "interexchange carrier" describes interLATA carriers, such as AT&T, MCI, and Sprint (hereinafter referred to as pure interexchange carriers or IXCs), and does not include local exchange carriers (LECs), such as appellant. In the alternative, it argued that its access rates to other ILECs could not be measured against its rates on file in February 1996 because those rates were never charged to ILECs.

The Commission set a public hearing on Staff's petition, and a number of ILECs and LECs were granted permission to intervene in the docket. Appellant was the only party at the hearing to argue that the access service provided between ILECs was not switched-access service as described by section 23-17-407(a). Appellant also argued that it would be necessary for the Commission to join all the ILECs in a proceeding and conduct a hearing to determine what rates were charged for ILEC-to-ILEC switched-access service in February 1996 if the Commission found that appellant's new tariff was subject to section 23-17-407(a)'s cap on switched-access service rates.

On July 9, 1998, in Order No. 7, the Commission ruled that appellant's Access Service Tariff revision of November 1997 was in violation of section 23-17-407(a). The Commission disagreed with appellant's contention that no ILEC can be an interexchange carrier regardless of the amount of interexchange traffic that the ILEC

carries. To support its holding, the Commission relied on the testimony of several witnesses who argued that an ILEC was an interexchange carrier for purposes of Act 77. These witnesses testified that ILEC-to-ILEC interexchange traffic is indistinguishable from traffic between an ILEC and a pure interexchange carrier (IXC), such as AT&T, Sprint, and MCI, and that ILECs have provided switched-access service as long as the ILECs have terminated interexchange calls with each other. The Commission noted that appellant's Access Service Tariff, which was in effect twelve months before it elected alternative regulation, defines an interexchange carrier and that its definition makes no distinction for toll traffic between exchanges carried by ILECs or IXCs. It further noted that the distinction between telecommunications providers historically identified as "interexchange carriers" (IXCs) and those identified as "local exchange carriers" (LECs) was misleading and inaccurate and was fading quickly as traditional ILECs enter the long distance, cellular, PCS, and paging markets, and that telecommunications providers, including appellant, advocate the need for one-stop shopping for telecommunications with one provider for local, long distance, and cellular communications needs. The Commission also disagreed with appellant's argument that it would be necessary for the Commission to conduct a hearing and determine a new rate applicable to ILEC-to-ILEC switched-access service if it found its tariff additions violated section 23-17-407(a), holding that appellant's access tariff on file in February 1996 is applicable to "*all* switched access services provided by appellant to any other provider of switched-access services."

■ ■ The Public Service Commission is a creature of the legislature and performs, by delegation, legislative functions. *Arkansas Elec. Energy Consumers v. Arkansas Pub. Serv. Comm'n*, 35 Ark. App. 47, 813 S.W.2d 263 (1991). As such, the commission possesses the same powers as the General Assembly while acting within its legislatively delegated powers and has very broad discretion in exercising those powers. *Id.* This court's review of appeals from the commission is limited by the provisions of Ark. Code Ann. § 23-2-423(c)(3), (4), and (5) (Supp. 1997), which define the standard of judicial review as determining whether the commission's findings of fact are supported by substantial evidence, whether the commission has regularly pursued its authority, and whether the order under review violated any right of the appellant under the laws or the

Constitutions of the State of Arkansas or the United States. *See Bryant v. Arkansas Pub. Serv. Comm'n*, 54 Ark. App. 157, 924 S.W.2d 472 (1996).

For its first point on appeal, appellant contends that the Commission failed to regularly pursue its authority by declaring that appellant's additions to its access service tariff violated the limits on switched-access service in section 23-17-407(a). Appellant contends that, because ILECs historically have not been considered "interexchange carriers" and because section 23-17-403(23) defines "switched-access service" using the term "interexchange carrier," its tariff additions cannot be for switched-access service and, therefore, do not violate section 23-17-407(a). Appellant's argument depends on the meaning of the term "interexchange carrier," which is used in section 23-17-403(23) and is not defined by Act 77. Appellant concedes that this term as well as the related term "interexchange long distance traffic" are ambiguous. It therefore contends that this court must give effect to the legislative intent when Act 77 was passed.

■■ The basic rule of statutory construction to which all other interpretive guides must defer is to give effect to the legislative intent underlying the statute. *Kildow v. Baldwin Piano & Organ*, 333 Ark. 335, 969 S.W.2d 190 (1998); *Vanderpool Fidelity & Cas. Ins. Co.*, 327 Ark. 407, 939 S.W.2d 280 (1997). When a statute is plain and unambiguous, an appellate court should give the language of the statute its plain and ordinary meaning, *see Kildow, supra*, but when the statute is ambiguous, an appellate court is permitted to look to the language of the statute, its subject matter, the object to be accomplished by the statute, the purpose to be served, and other appropriate matters. *See Alltel Mobile Communications, Inc. v. Arkansas Pub. Serv. Comm'n*, 63 Ark. App. 197, 975 S.W.2d 884 (1998). As a guide in ascertaining the legislature's intent, the court examines the history of the statutes involved, as well as the contemporaneous conditions at the time of their enactment, the consequences of interpretations, and all other matters of common knowledge within the court's jurisdiction. *Southwestern Bell Tel. Co. v. Arkansas Pub. Service Comm'n*, 68 Ark. App. 148, 5 S.W.3d 484 (1999). The interpretation of a statute is a judicial function, and the Commission's construction is not binding on the court. *See Omega Tube & Conduit Corp. v. Maples*, 312 Ark. 489, 850 S.W.2d 317 (1992), *reh'g denied*, 312 Ark. 499A, 850 S.W.2d 322 (1993). Nevertheless, the

interpretation given a statute by the agency charged with its execution is highly persuasive, and while not conclusive, neither should it be overturned unless it is clearly wrong. *Id.*

Appellant agrees that there is no difference between the access service it provides to other ILECs and the switched-access service it provides to IXCs. It maintains, however, that the origination and termination of ILEC-to-ILEC toll traffic is not "switched-access service," because section 23-17-403(23)'s definition of switched-access service is very precise and specifically uses the term "interexchange carrier." Appellant contends that the term "interexchange carrier" has a long and well-established meaning within the telecommunications industry and that, at the time the legislature passed Act 77, its meaning was restricted to pure IXCs, such as AT&T, MCI, and Sprint. In support of its argument, it relies on *United States v. Western Electric Co.*, 569 F. Supp. 990 (1983), where Judge Harold Greene, on reviewing the divestiture plan of the Bell Operating Companies, referred to long-distance calls between exchanges in different LATAs as "interexchange communications" and carriers of those calls as "interexchange carriers." *Id.* at 994 n.15. Appellant argues that since that time, the term "interexchange carrier" has been used to distinguish intercity carriers, such as AT&T, MCI, and Sprint, from local exchange carriers, such as appellant. *But see Southwestern Bell Tel. Co. v. Metro-Link Telecom, Inc.*, 919 S.W.2d 687, 694 n.3 (Tex. Ct. App. 1996) (explaining that there was no reason for Judge Greene in *Western Electric* to use the term "interexchange carrier (IXC)" to describe intraLATA carriers, because that case did not involve the provision of intraLATA long-distance by non-Bell operating companies and the court specifically left the provision and regulation of intraLATA long-distance service to the states). Appellant also cites examples where the Commission has used the term "interexchange carriers" to describe only pure interexchange carriers. For example, the Intrastate Flat Rate Carrier Common Line Service Tariff, 3rd Revised Sheet 2, approved by the Commission, defined the term "interexchange carrier" to include any entity "that is not a LEC...." In *Southwestern Bell Telephone Co. v. Arkansas Public Service Commission*, 58 Ark. App. 145, 946 S.W.2d 730 (1997), the term "interexchange carrier" or "IXC" was also used to describe pure long-distance carriers.

Appellant contends that there is a well-established presumption that the General Assembly enacts a new law with full knowledge of

previous court decisions on the subject and with reference to those decisions, *Reed v. State*, 330 Ark. 645, 957 S.W.2d 174 (1997), and *Scarbrough v. Cherokee Enterprises*, 306 Ark. 641, 816 S.W.2d 876 (1991), and therefore, this court must presume that the legislature was aware that the term "interexchange carrier" had been used solely to describe pure IXCs when it enacted Act 77 and would have explicitly defined the term to mean something broader if it had intended it to apply to ILECs. It points out that, after the passage of Act 77, the Commission adopted the *Telecommunication Provider Rules (TPR)* and the *Rules of Practice and Procedure (RPP)* in compliance with Act 77's directive to "conduct a rule-making proceeding to identify and repeal all rules and regulations relating to the provision of telecommunications service which are inconsistent with, have been rendered unnecessary by, or have been superseded by either this sub-chapter of the federal act." Ark. Code. Ann. § 23-17-411(d) (Supp. 1997). These rules, which were later accepted by the House and Senate Utility Subcommittee and the Administrative Rules and Regulation Subcommittee, define the term "interexchange carrier" as "[a]ny entity that is *not* a local exchange carrier and that provides interexchange communications to the public for compensation in the State of Arkansas." (Emphasis added.) Appellant contends that the legislature's acceptance of these rules clearly demonstrates its intent to restrict the term "interexchange carrier" to pure IXCs.

▮ The term "interexchange carrier" has been used numerous times to describe pure long-distance carriers; however, we do not agree that this has been its only meaning. It is clear from the exhibits filed in this proceeding that the term "interexchange carrier" has a broader meaning than a pure long-distance carrier. In fact, appellant's own definition of interexchange carrier, which appears in section 2.7 of its Access Service Tariff, states that "Interexchange Carrier (IC)" or "Interexchange Common Carrier" "[d]enotes any individual, partnership, association, joint-stock company, trust, governmental entity or corporation engaged for hire in intrastate communication by wire or radio, between two or more exchanges." Access Service Tariff, Section 2.7, 8th Revised Sheet. The legislature has also defined the term in a broader sense than the definition appellant urges this court to adopt. Although interexchange carrier is not defined in Act 77, it was defined in Act 483

of 1983, the Universal Telephone Service Act, formerly codified at Ark. Code Ann. § 23-17-301(2) (1987):

> "Interexchange carriers" includes persons, corporations, or other organizations which provide communications services which interconnect with local exchanges under provisions of the inter-state and intrastate access charges tariffs and may include such other persons, corporations, or organizations engaged in interexchange communication services as the commission may find necessary for the successful administration of the fund established in section 23-17-304....

The Commission referenced this definition in Order No. 7 when it explained why it found the definition of interexchange carrier included in the *TPR* and *RPP* was not dispositive of the term's meaning in section 23-17-403(23). Quoting from the Post Hearing Brief of Alltel Arkansas, Inc., Order No. 7 provides:

> SWBT attempts to rely on the definition of the term inter-exchange carrier as such appears in the Commission's rules. This reliance, however, is misplaced. The rules cited by SWBT specify distinctions made by the Commission for an entirely different purpose than the purpose for which SWBT attempts to use the term. The definition of interexchange carrier reflected in the rules has no utility other than for applying the rules in which the definition appears. A review of the rules reflects that their function is to establish certain administrative matters, such as tariff require-ments and service obligations of the relevant carriers. The statute on the other hand functions for entirely different reasons, such as spelling out the provisions or terms of alternative regulation, including the capping of certain services. The rules do not address alternative regulation or what services are capped by alternative regulation, and therefore, were not intended to define the meaning of interexchange carriers as that term applies to capped services.
>
> It is simply incorrect and illogical for SWBT to argue that Commission rules on one subject and developed for one purpose control a statute of another subject. If SWBT's argument were correct, then all of the definitions of interexchange carrier cited above that appear in a variety of Commission dockets and that have been approved by this Commission would similarly be controlled by the definition appearing in the rule. Or, more logically the definition appearing in the statute that established the Arkansas Universal Telephone Service Fund would control over all these and SWBT would still be wrong. However, none of these control Act

77. Act 77 did not define the term interexchange carrier and, therefore, it must be interpreted to have the plain meaning described by Staff, ALLTEL, and others based on the clear intent of the legislature. *ALLTEL Brief at 8-9.*

■ Although we find the definition of interexchange carrier that appears in the *TPR* and *RPP* troubling, we are not persuaded that the Commission disregarded legislative intent in rejecting this definition as controlling. At the hearing, John Bethel, Manager of the Telecommunications Section for Staff, testified that appellant's provision of switched-access service to other ILECs is not a new service and that ILECs have provided switched-access service to other ILECs as long as the ILECs have terminated interexchange calls with each other. He stated that each ILEC is an interexchange carrier when it delivers traffic from one exchange to another; that both ILECs and IXCs require switched-access services in order to complete toll calls; and that the switched-access service required to complete those calls for an ILEC is indistinguishable from the switched-access service required by an IXC. Bethel explained that the definition of interexchange carrier that appears in the *TPR* and *RPP*was developed when there were separate rules applicable to LECs and IXCs, *i.e. Special Rules-Telecommunications*, which addressed the interexchange service provided by the LECs, and *Interexchange Carrier Rules*, which addressed the interexchange service provided by IXCs; that now a single set of rules addresses the interexchange service provided by LECs and IXCs; and that the definition of interexchange carrier that came from these earlier rules is inconsistent with the new rules and should be revised. He stated that a reasonable definition of an "interexchange carrier" is a telecommunications provider that provides interexchange service.

■ ■ In determining the intent of the legislature, this court must look at the whole act and, as far as practicable, give effect to every part, reconciling provisions to make them consistent, harmonious, and sensible. *Brandon v. Arkansas Pub. Serv. Comm'n*, 67 Ark. App. 140, 992 S.W.2d 834 (1999). This court not only looks at the language of the statute but also its subject matter, the object to be accomplished by the statute, the purpose to be served, and other appropriate matters. *Id.* The legislative intent behind Act 77 is codified at Ark. Code Ann. § 23-17-402 (Supp. 1997) and states in part that the intent behind the enactment of Act 77 is to "[p]rovide for a system of regulation of telecommunications services, consis-

tent with the federal act, that assists in implementing the national policy of opening the telecommunications market to competition on fair and equal terms, modifies outdated regulation, eliminates unnecessary regulation, and preserves and advances universal service." The Commission referenced this intent in Order No. 7, holding:

> [I]n light of the federal Telecommunications Act of 1996's goal of eliminating discriminatory action against any telecommunications provider, the Commission cannot, in good faith, implement the rate cap of Ark. Code Ann. § 23-17-407(a) (1997) in a way that creates an artificial and discriminatory distinction against ILEC to ILEC toll traffic that is not explicitly established by statute.... [I]f the Commission interprets "interexchange carrier" to include all parties who provide interexchange service, including ILECs, "then all parties that send SWBT an intrastate, interexchange call for termination will be treated equally." [Brief of GTE Southwest, Inc., and GTE Arkansas, Inc., at 3.]

Based on this language as well as the evidence of the varied usage of the term "interexchange carrier," we cannot say that the Commission's interpretation of this term is clearly wrong or that the Commission erred in applying section 23-17-407(a) to appellant's November 1997 tariff additions. Therefore, we affirm on this point.

We also affirm the Commission on appellant's second point. Appellant contends that, even if the Commission correctly determined that its tariff additions for ILECs is subject to section 23-17-407(a)'s rate cap on switched-access service, Order No. 7 is still unlawful. It argues that the rates that Order No. 7 forces appellant to charge other ILECs for switched-access service were never charged to ILECs and, therefore, were not in effect twelve months prior to the date that it elected alternative regulation as described in section 23-17-407(a). It insists that the switched-access rates for ILECs, capped by section 23-17-407(a), are the rates that were included in the Arkansas IntraLATA Toll Pool (AITP) in February 1996 and that the Commission should be ordered to conduct a hearing to determine these rates.

It is undisputed that ILECs were neither billed nor paid the traffic-sensitive portion of their switched-access service set forth in their individual intrastate access service tariffs prior to the passage of Act 77. At the hearing, Staff's Telecommunications manager, John

Bethel, explained that, historically, the traffic-sensitive portion of the switched-access services for ILEC-to-ILEC traffic has been settled through the Arkansas IntraLATA Toll Pool (AITP) settlement process and that there was no specific rate charged for this access, although it was included in the costs submitted for recovery through each ILEC's AITP settlement. Conversely, the traffic-sensitive switched-access service charges for IXC-to-ILEC traffic have been collected by each ILEC pursuant to its access service tariff.

After the enactment of Act 77, the AITP was abandoned by appellant and the majority of the other ILECs. Appellant, however, was the only party to assert that the traffic-sensitive rates for the ILECs' switched-access service should be the same rates derived from the AITP. John Bethel argued that, if the switched-access service rates embodied in the AITP settlements process were used, the maximum rate would be zero because there were no rates in the AITP settlement process for the traffic-sensitive element of switched-access service associated with ILEC-to ILEC traffic. Alltel witness Leonard Beurer also agreed that switched-access service rates could not be determined from the AITP. He testified that there were no access rates being charged to the AITP by ILECS nor were there access rates being charged between the ILECS in the AITP. He explained that the AITP was utilized to distribute revenues received from the toll charges billed ILEC end-use customers and charges received from the Arkansas IntraLATA Common Carrier Line Pool and that those revenues could have been distributed to the ILEC's using any number of allocation procedures, including a basis of access lines or number of employees. Although appellant witness Eldon Peters contended that the rates ILECS charged each other for switched-access service through the AITP could be computed and testified extensively regarding the method he employed to determine specific rates, he also admitted that some estimation was necessary. Alltel witness Beurer testified that the information Peters used to compute AITP access amounts were in error and appeared to be inaccurate by more than ten percent. Staff witness Bethel also disagreed with Peter's methods, stating that the detail of the information required for AITP reporting was insufficient to identify specific access elements and quantify a switched-access service rate associated with the ILEC-to-ILEC interexchange traffic.

In Order No. 7, the Commission found appellant's assertion that the Commission must determine a rate applicable to ILEC to

ILEC switched-access service for all ILECS to be without merit. It noted that it was the ILECs, including appellant, which chose to discontinue participation in the AITP, but that appellant was the only ILEC that advocated charging ILECS a rate for switched-access toll traffic that is different from the charge IXCs pay for the same service. It also noted that appellant's tariff, in effect twelve months before it elected alternative regulation, states that it "is available to all customers"; that its definition of "customer" includes ILECS; that any IXC or ILEC engaged in the provision of inter-exchange services could demand and receive service under the terms of its access tariff; and that appellant could not refuse to provide such service in accordance with its tariffed offering. The Commission concluded that "[a]ll telecommunications providers that carry toll traffic between a SWBT exchange and another exchange are subject to the rates for switched access services set out in SWBT's Access Service Tariff as the tariff provides and those tariffed rates are subject to the cap established by Ark. Code Ann. § 23-17-407(a)."

The Commission has broad discretion in exercising its regulatory authority, and courts may not pass upon the wisdom of the Commission's actions or say whether the Commission has appropriately exercised its discretion. *Bryant v. Arkansas Pub. Serv. Comm'n*, 55 Ark. App.125, 931 S.W.2d 795 (1996); *Bryant v. Arkansas Pub. Serv. Comm'n*, 54 Ark. App. 157, 924 S.W.2d 472 (1996). As the trier of fact in rate cases, it is the Commission's function to decide on the credibility of the witnesses, the reliability of their opinions, and the weight to be given their testimony. *Bryant v. Arkansas Pub. Serv. Comm'n*, 64 Ark. App. 303, 984 S.W.2d 61 (1998).

> Administrative action may be regarded as arbitrary and capricious only where it is not supportable on any rational basis, and something more than mere error is necessary to meet the test. To set aside the Commission's action as arbitrary and capricious, the appellant must prove that the action was a willful and unreasoning action, made without consideration and with a disregard of the facts or circumstances of the case. This Court has often said that, if an order of the Commission is supported by substantial evidence and is neither unjust, arbitrary, unreasonable, unlawful, or discriminatory, then this court must affirm the Commission's action.

*Bryant*, 55 Ark. at 135, 931 S.W.2d at 800 (citations omitted).

■ Based on the evidence before the Commission, we cannot say it erred in applying appellant's switched-access service tariff that was on file in February 1996 to all switched-access service provided by appellant.

Affirmed.

HART, STROUD, NEAL, CRABTREE, and ROAF, JJ., agree.