The Honorable Robert Thompson State Representative 414 West Court Street Paragould, AR 72450-4293
Dear Representative Thompson:
I am writing in response to your request for my opinion concerning the continued contributions of Circuit Judge David Goodson to the Arkansas Judicial Retirement System (AJRS). You note that Judge Goodson became eligible as of January 1, 2005, for a "full benefit" from AJRS by establishing reciprocity between AJRS and the Arkansas Public Retirement System (APERS).[1] He requested that the Board of Trustees of AJRS ("Board") "certify [him] as being eligible for retirement effective, January 1, 2005[,]" and that his contributions to AJRS cease effective that date. Letter from David Goodson, Circuit Judge to Robert Edwards, Chairman AJRS (July 7, 2004). According to my understanding, Judge Goodson did not wish to retire, but rather was requesting that he be allowed to cease making contributions based upon A.C.A. § 24-8-211, which provides:
 When a judge is certified as eligible for retirement, no further contribution shall be required of him.
The Board denied his request, and you have asked:
 Pursuant to the provisions of Arkansas Code Annotated Section 24-8-211, may the Arkansas Judicial Retirement System Board of Trustees continue to require Judge Goodson to make monthly contributions?
RESPONSE
It is my opinion that the answer to your question is in all likelihood "yes." I reach this conclusion following the familiar rule of statutory construction that an administrative agency's interpretation of a statute will not be overturned unless it is clearly wrong. See generallyCloverleaf Express v. Fouts, No. CA 04-921 (Ark.Ct.App. April 27, 2005). I cannot say that the Board's interpretation of A.C.A. § 24-8-211
is clearly wrong in this instance. To the contrary, I believe the Board's interpretation is likely supported by the history and purpose of this provision.
The Board's denial of Judge Goodson's request to cease contributions was based upon its determination that "active members of AJRS Tier 1 (including reciprocal members) are eligible to stop contributing to the System when the member has 20 years of actual service in AJRS Tier 1 orreaches age 65 with at least 10 years actual service in AJRS Tier 1."[2]
Letter from Gail H. Stone, Executive Director AJRS to Judge David Goodson (March 17, 2005) (emphasis original).[3]
The Board thus interpreted A.C.A. § 24-8-211, supra, to apply to a judge who meets the age and service requirements to receive benefits from AJRS pursuant to A.C.A. § 24-8-201 et seq. (the judicial retirement system law). According to the Board, the provision for a judge to cease contributions to AJRS when he or she is "certified as eligible for retirement" does not apply to one who is eligible for benefits based on reciprocity pursuant to A.C.A. § 24-2-402. It will be helpful in understanding this distinction to set out the relevant provisions of the latter Code section pertaining to reciprocal service. Section 24-2-402
provides in relevant part:
 If a member of a reciprocal system left or leaves a position covered by a reciprocal system, . . . and if that person entered or enters a position covered by a reciprocal system, which in this section is called the "succeeding system", and if the person is a member of the succeeding system after July 1, 1975, then the person shall be entitled to a deferred annuity payable by the preceding system subject to the following conditions:
 (1) The person has credited service acquired in the employ of the preceding state employer;
 (2)(A) The person does not withdraw his or her accumulated contributions from the preceding reciprocal system, or . . . he or she deposits with the preceding reciprocal system the amount he or she withdrew.
* * *
 (3) The person qualifies for age and service retirement in the succeeding reciprocal system using his or her credited service in force with the preceding system plus his or her credited service acquired in the employ of succeeding state employers to meet the minimum age and service requirements of the succeeding systems;
 (4)(A) The person's annuity payable by the preceding reciprocal system shall be upon the basis of the annuity formula of the preceding reciprocal system. . . .
* * *
 (7)(A) If the preceding or succeeding reciprocal system is the Arkansas Judicial Retirement System and the member's benefits are determined under § 24-8-201 et seq., the benefit payable by the Arkansas Judicial Retirement System shall be determined by multiplying the benefit provided by § 24-8-218 by the following fraction:
 (i) The numerator shall be the number of the actual years of service credited in the Arkansas Judicial Retirement System as a justice of the Arkansas Supreme Court or judge of the circuit or chancery courts or the Arkansas Court of Appeals; and
(ii) The denominator shall be fourteen (14) years. . . .
A.C.A. § 24-2-402 (Supp. 2003).
AJRS and APERS are "reciprocal systems" under this provision. See § A.C.A. 24-2-401(3) (Supp. 2003). Judge Goodson's credited service with these reciprocal systems entitles him to a benefit payable by AJRS in accordance with § 24-2-402(7)(A), supra, and an annuity payable by APERS (his preceding state employer), pursuant to § 24-2-402(4), supra. The Board in effect determined that qualifying for these benefits is distinguishable from being "certified as eligible for retirement" under A.C.A. § 24-8-211, supra.
This distinction has merit, in my opinion. As an initial matter, I note that the phrase "certified as eligible for retirement" is not statutorily defined, nor has it been interpreted by the Arkansas courts. Because the meaning of this phrase is unclear, it is appropriate for me to consider the Board's interpretation of the phrase, as well as other appropriate guides to interpretation in accordance with established rules of statutory construction. The following summary of these rules is instructive in this regard:
 The basic rule of statutory construction to which all other interpretive guides must defer is to give effect to the legislative intent underlying the statute. Kildow v. Baldwin Piano Organ, 333 Ark. 335, 969 S.W.2d 190 (1998); Vanderpool Fidelity Cas. Ins. Co., 327 Ark. 407, 939 S.W.2d 280 (1997). When a statute is plain and unambiguous, an appellate court should give the language of the statute its plain and ordinary meaning, see Kildow, supra, but when the statute is ambiguous, an appellate court is permitted to look to the language of the statute, its subject matter, the object to be accomplished by the statute, the purpose to be served, and other appropriate matters. See Alltel Mobile Communications, Inc. v. Arkansas Pub. Serv. Comm'n, 63 Ark. App. 197, 975 S.W.2d 884 (1998). As a guide in ascertaining the legislature's intent, the court examines the history of the statutes involved, as well as the contemporaneous conditions at the time of their enactment, the consequences of interpretations, and all other matters of common knowledge within the court's jurisdiction. Southwestern Bell Tel. Co. v. Arkansas Pub. Service Comm'n, 68 Ark. App. 148, 5 S.W.3d 484 (1999). The interpretation of a statute is a judicial function, and the Commission's construction is not binding on the court. See Omega Tube Conduit Corp. v. Maples, 312 Ark. 489, 850 S.W.2d 317 (1992), reh'g denied, (1993). Nevertheless, the interpretation given a statute by the agency charged with its execution is highly persuasive, and while not conclusive, neither should it be overturned unless it is clearly wrong. Id.
Southwestern Bell Tel. v. AR. Pub. Serv., 69 Ark. App. 323, 329-330,13 S.W.3d 197 (2000) (emphasis added).
Applying these principles, I find support in the history and purpose of A.C.A. § 24-8-211 for the view that retirement based on reciprocity should not be treated the same as being eligible for retirement for purposes of ceasing contributions to AJRS pursuant to this Code section. The provision for cessation of contributions upon retirement was originally enacted under Act 365 of 1953, which was entitled:
 An Act to Require . . . Judges . . . to Contribute to a Trust Fund Established in the State Treasury If They Participate in Benefits; to Require the Treasurer of State to Make Certain Transfers From the General Revenue Fund to Supplement Such Individual Contributions; to Provide for the Retirement of Judges; to Create a Supervisory Board; and for Other Purposes.
 As reflected by this title, the judicial retirement plan as originally conceived required the state to supplement amounts collected from individual participants, the latter amounts constituting the "Trust Fund." See § 7 of Act 365. The state supplements, which were made either from general revenues or from other funds designated by the legislature, were made "in an amount sufficient to meet retirement requirements as they mature[d]." Id. This funding scheme sheds significant light on your question concerning the provision for no further contributions from those "certified as eligible for retirement" (A.C.A. § 24-8-211, supra.) This language derives from § 9 of the 1953 act, and remains unchanged since its original enactment. The reference to a judge being "certified as eligible for retirement" alludes to a certification process that was triggered when a judge exercised his right to retire under the terms of the act.[4] The administrative "Board" created under the act (and subsequently recreated as the "Board of Trustees of the Arkansas Judicial Retirement System" (Acts 1985, No. 235)), approved the retirement through a document that was filed with the State Treasurer after its recording with the Secretary of State. Id. at A.C.A. § 2. A "certificate of the Board in voucher form" was also issued to evidence the retiring judge's "retirement compensation." Id. at § 4. A judge would "certify for benefits" (id. at § 11) through this process. The voucher was transmitted to the State Auditor, who would issue a warrant payable to the judge. Id. at § 4.
The certification process therefore served the purpose of establishing a retiring judge's benefit entitlement, which was based upon service in the judicial retirement system. Additionally, and particularly significant for purposes of your question, state funding was based upon the amount needed to make up the difference between personal contributions (the "Trust Fund" balance) and matured retirement requirements. No further individual contributions were required after a judge was "certified as eligible" because this certification coincided with the judge's retirement and the state could determine what amount of funds would be "sufficient to meet disbursements." Id. at § 7. The state could look at the total amount of individual contributions in the Trust Fund and determine the supplemental amount necessary to pay benefits.
When this original judicial retirement legislation and its subsequent history are considered as a combined whole, particularly taking into account funding provisions, I believe it becomes evident that the Board is not clearly wrong in requiring Judge Goodson to continue making contributions to the system. A primary consideration in this regard is the institution of an actuarial funding method for AJRS in 1983. See Acts 1983, No. 922. Instead of supplementing individual contributions to meet disbursement requirements as they mature, the state now makes contributions under a formula that involves a set percentage of payroll and an "actuarially determined employer rate." A.C.A. § 24-8-210. Subsection 24-8-210 provides:
 (a) The state, as employer, shall make contributions to the Arkansas Judicial Retirement System of twelve percent (12%) of the active member payroll.
 (b) The Chief Fiscal Officer of the State is authorized and directed to make annual transfers on each July 1 to the Judges Retirement Fund from the Constitutional Officers Fund and the State Central Services Fund in an amount determined by computing the dollar amount required based on the actuarially determined employer rate in the most recent annual actuarial valuation and subtracting from that amount the statutory contribution amount specified in subsection (a) of this section, and further, reduced by the amount of the court cost revenue transferred to the Judges Retirement Fund from the State Administration of Justice Fund in accordance with § 16-10-310.
A.C.A. § 24-8-210 (Supp. 2003) (emphasis added).
With the advent of this "actuarial valuation" funding method, the state understandably must make assumptions regarding individual contributions in order to determine what amount of state funds must be transferred to AJRS. It is my understanding that the valuation is based on 20 years of contributions to AJRS, the minimum years of credited service in AJRS to be eligible to retire regardless of age. A.C.A. § 24-8-215 (Repl. 2000). The Board requires contributions for this period, or until an active member otherwise meets the age and service requirements under § 24-8-215
(not taking into account reciprocal service).[5] This approach seems consistent with the history, noted above, of correlating the cessation of contributions to the state funding determination.
It would seem illogical, moreover, to allow members to discontinue AJRS contributions based upon service in another retirement system, as proposed in the matter at hand involving the use of reciprocal service credits pursuant to A.C.A. § 24-2-402, supra. The judicial retirement plan does not contemplate another system's contributions going into AJRS, except in those instances when a transfer is made to AJRS for services credited to AJRS under the judicial retirement statutes. See A.C.A. §§24-8-212—214, supra at n. 2. Consequently, considering the history and purpose of A.C.A. § 24-8-211, supra, and the role of individual contributions in determining state funding requirements, I conclude that qualifying for retirement in AJRS through reciprocity is not the same as being "certified as eligible for retirement" as contemplated by §24-8-211.
 In conclusion, therefore, taking into account Judge Goodson's current service in AJRS Tier 1 and his current age, it is my opinion that the Board of Trustees of the Arkansas Judicial Retirement System Board of Trustees may, consistent with A.C.A. § 24-8-211, require him to continue making monthly contributions.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:EAW/cyh
[1] He is eligible for a "full benefit" from AJRS, i.e., 60% of his salary (see A.C.A. § 24-8-218 (Supp. 2003)) because of the formula under A.C.A. § 24-2-402(7)(A) (Supp. 2003) that applies when AJRS is a "succeeding reciprocal system" as contemplated by A.C.A. §§ 24-2-401—408 (Repl. 2000 and Supp. 2003), regarding reciprocal service.
[2] Because contributions are only required of "members" (see A.C.A. §24-8-209), they of course are no longer required if one retires and thereby ceases membership in the system.
[3] It is my understanding that the reference to "actual service" in this correspondence is intended to include military service credit (A.C.A. §§ 24-2-501 and -502 (Repl. 2000 and Supp. 2003), as well as credited service as a municipal judge (A.C.A. 24-8-212 (Repl. 2000) and prosecuting attorney (A.C.A. 24-8-213 and -214 (Repl. 2000)).
[4] The 1953 act provided for retirement, at one-half salary, for those aged 65 who had 15 years of elective service, and at age 70, apparently without regard to years of service. Acts 1953, No. 365, §§ 2 and 4.
[5] An active member with 10 years of credited service in AJRS may retire at age 65.0 A.C.A. § 24-8-215(a).